The defendants below, Elizabeth Homes, L.L.C., Jimmy Flanagan, and Carl Smith, appeal from the trial court's order denying their motion to compel arbitration of the claims asserted against them by the plaintiffs, Danny Cato and Cynthia L. Cato. We reverse and remand.
 Facts and Procedural History
Elizabeth Homes sells and constructs what it describes as "single-family residential *Page 3 
structures." In Jane 2003, the Catos and Elizabeth Homes entered into a "purchase agreement" for the construction of a house on property owned by the Catos. The document contains an arbitration provision, which states:
 "[Elizabeth Homes] and [the Catos] acknowledge that this agreement necessarily involves interstate commerce by virtue of the materials and components contained in the dwelling and each of the undersigned hereby agrees to arbitrate any and all disputes arising under this agreement and to be bound by the decision of the arbitrator which shall be conducted pursuant to the Construction Industry Rules of the American Arbitration Association."
(Emphasis added.)
After the Catos moved into the house, they sued Elizabeth Homes, seeking damages for promissory fraud, breach of warranty, breach of contract, breach of implied contract, negligence and wantonness in constructing the house and the setting of its elevation, and negligence and wantonness in damaging the flooring in the house. The complaint further named Elizabeth Homes `"managing member," Jimmy Flanagan, and Elizabeth Homes' office manager, Carl Smith, as defendants.
The defendants filed a motion to compel the Catos to arbitrate their claims pursuant to the arbitration provision, in the purchase agreement. The motion was supported by an affidavit by Flanagan and a copy of the purchase agreement. The Catos filed a response, which included no evidentiary support, and the trial court held a hearing on the motion. Subsequently, the trial court denied the motion by a notation on the case-action summary. Elizabeth Homes, Smith, and Flanagan appeal.
 Standard of Review
"`[T]he standard of review of a trial court's ruling on a motion to compel arbitration at the instance of eitherparty is de novo determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review.' Exparte Roberson, 749 So.2d 441, 446 (Ala. 1999). Furthermore:
 "`A motion to compel arbitration is analogous to a motion for summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Id. "After a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question."'
 "Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala. 2000) (quoting Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala. 1995) (emphasis omitted))."
Vann v. First Cmty. Credit Corp., 834 So.2d 751,752-53 (Ala. 2002).
 Discussion
The Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("the FAA"), provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable. . . ." 9 U.S.C. § 2. The FAA "mandates the arbitration of claims encompassed by an arbitration clause that is contained in a binding contract that involves *Page 4 
interstate commerce." Ex parte Conference America,Inc., 713 So.2d 953, 955 (Ala. 1998).
The defendants produced substantial evidence — the purchase agreement and Flanagan's affidavit — indicating that the parties entered into a contract containing a written provision to settle by arbitration a controversy thereafter arising out of the contract. Additionally, there is no dispute in the record or on appeal as to whether the transaction in this case involved interstate commerce.[1] Therefore, the defendants' motion to compel arbitration was properly supported by substantial evidence, and the burden then shifted to the Catos to present evidence indicating that the arbitration provision was invalid or that it did not apply to the dispute here.
 I
First, as a threshold matter, the Catos argue that Smith and Flanagan have failed to present any arguments on appeal, because the appellants' brief contends that the judgment should be reversed only as to "Elizabeth Homes." Thus, the Catos argue, Smith and Flanagan have waived any error as to them.
There is, however, no merit to this argument. The statement of the case in Elizabeth Homes' brief states that Elizabeth Homes, L.L.C., Carl Smith, and Jimmy Flanagan would be referred to "collectively" as "Elizabeth Homes." The name "Elizabeth Homes" when used in the appellants' brief thus includes Smith and Flanagan. Additionally, the notice of appeal lists the "appellants" as Elizabeth Homes, Smith, and Flanagan, and the appellants' brief refers in several places to the "appellants." We find no waiver on the part of Smith and Flanagan.
 II.
The Catos present numerous arguments on appeal as to why the arbitration provision does not apply in this case. First, the Catos maintain that the defendants "failed to present any evidence that the Purchase [Agreement] ever became a binding contract" because the copy of the purchase agreement submitted with the motion to compel arbitration was unauthenticated and unsigned by Elizabeth Homes.
Rule 56(e), Ala. R. Civ. P., generally requires that"[s]worn or certified copies" of documents referred to in an affidavit offered supporting or opposing a motion for a summary judgment be attached to the affidavit.[2] However, if an affidavit or the documents attached to an affidavit fail to comply with this rule, the opposing party must object to the admissibility of the affidavit or the document and move to strike. Ex parte Elba Gen. Hosp. Nursing Home,Inc., 828 So.2d 308, 312-13 (Ala. 2001) (noting that a party must object to evidence submitted in support of a motion for a summary judgment that does not comply with Rule 56(e), Ala. R. Civ. P.); Chatham v. CSX Transp., Inc.,613 So.2d 341, 344 (Ala. 1993) ("A party must move the trial court to strike *Page 5 
any nonadmissible evidence that violates Rule 56(e). Failure to do so waives any objection on appeal and allows this Court to consider the defective evidence."). The copy of the purchase agreement submitted with Flanagan's affidavit was not a certified copy. The Catos, however, did not object to or move to strike the purchase agreement when it was filed with Flanagan's affidavit. Therefore, they waived any objection based on improper authentication of the purchase agreement. SeeBerry Mountain Mining Co. v. American Res. Ins. Co.,541 So.2d 4, 4-5 (Ala. 1989) (holding that a nonmovant who failed to move to strike unauthenticated documents submitted in support of a motion for a summary judgment waived objection on appeal as to the admissibility of the documents).
The Catos also allege that the purchase agreement was not signed by Elizabeth Homes; thus, they argue, it is not binding. The record reveals that the signature line for Elizabeth Homes on the purchase agreement is unsigned, although Carl Smith's signature appears above it as a witness to the Catos' signatures. The purchase agreement states that it becomes binding "upon written acceptance by [an Elizabeth Homes] officer or upon [Elizabeth Homes'] commencing performance," but the Catos contend that Flanagan's affidavit fails to state that Elizabeth Homes commenced performance.
The defendants respond to this argument as follows:
 "Elementary logic dictates that Elizabeth Homes could not have constructed the home without actually `commencing' construction. Furthermore, the Catos' Complaint is replete with assertions that Elizabeth Homes constructed the house. It is absurd to even suggest to this Court that despite the fact that all of the parties admit that Elizabeth Homes constructed the home, Elizabeth Homes must nevertheless specifically allege that it `commenced' construction. It is quite obvious from the record that Elizabeth Homes `commenced' construction. If Elizabeth Homes had not commenced construction the Catos would have absolutely no basis for relief against the [defendants] as the entirety of the Catos' Complaint is based on Elizabeth Homes' construction of the home."
(Appellants' reply brief at 5.).
The Catos cite Premiere Chevrolet, Inc. v. Headrick,748 So.2d 891 (Ala. 1999), for the proposition that a party cannot enforce an agreement to arbitrate found in a contract it has not signed. However, the document at issue inPremiere Chevrolet was part of a multi-document automobile transaction, and the arbitration provision was part of a "buyer's order" that specifically stated that it was not valid or "binding" unless signed and accepted by the automobile dealer.
Here, Flanagan's affidavit states that Elizabeth Homes "entered into a Purchase Agreement" with the Catos and discusses "[t]he terms of the Purchase Agreement between Elizabeth Homes, LLC[,] and Cynthia L. Cato and Danny Cato. . . ." The defendants further asserted in their motion to compel arbitration that Elizabeth Homes entered into the purchase agreement with the Catos and constructed the house. The Catos never denied these assertions or presented any affidavits or evidence demonstrating that they did not enter into the purchase agreement or that the house was never constructed. Indeed, the Catos' complaint states affirmatively that Elizabeth Homes constructed the house. Although the defendants' motion to compel and supporting evidence are bare, thus complicating our review, given Flanagan's affidavit we hold that the defendants presented substantial evidence *Page 6 
that Elizabeth Homes entered into the purchase agreement with the Gatos.
The Catos also argue that the defendants have failed to prove that the purchase agreement applies to the Catos' house:
 "Further, [the defendants] failed to meet [their] evidentiary burden of proving that the unsigned contract applies to the home that is the subject of the Catos' complaint. Flanagan's affidavit failed to state that [Elizabeth Homes] constructed a home for the Catos, that it constructed only one home, or that the home on which this suit is based is the home described in the Purchase Agreement."
(Catos' brief at 14.)
As noted above in Vann, supra, the defendants, in moving to compel arbitration, had the burden of producing substantial evidence of "the existence of a contractcalling for arbitration and proving that that contractevidences a transaction affecting interstate commerce."
Once this was done, the burden then shifted to theCatos to present evidence indicating that the arbitration provision is invalid or that it does not apply to the dispute in question.
In this case, the Catos' allege that Elizabeth Homes constructed a house for them, and they seek damages stemming from the construction of the house. Flanagan testified in his affidavit that Elizabeth Homes and the Catos entered into a contract — the purchase agreement — for the construction of a house; that contract contains an arbitration provision. The defendants thus met their burden of production.
Because the defendants met their burden of production, the burden then shifted to the Catos to show that the arbitration provision in the purchase agreement was invalid or that it does not apply to this dispute. Vann, supra. The Catos did not challenge the validity of the arbitration provision. Additionally, the Catos never argued to the trial court that the purchase agreement did not involve the construction of the house at issue, and they presented no evidence on this point. On appeal, the Catos still do not deny that the purchase agreement was a contract to build the house they argue was built negligently and wantonly. Because the Catos presented no evidence showing that Elizabeth Homes constructed the house pursuant to some other agreement or contract, whether written or oral, the Catos failed to meet their burden in showing that the arbitration provision in the purchase agreement does not apply. We thus see no merit in the Catos' argument. See Chastain v. Robinson-HumphreyCo., 957 F.2d 851, 855 (11th Cir.1992) ("A party cannot place the making of the arbitration agreement in issue simply by opining that no agreement exists. Rather, that party must substantiate the denial of the contract with enough evidence to make the denial colorable."); Manning v. Energy ConversionDevices, Inc., 833 F.2d 1096, 1103 (2d Cir.1987) ("A party resisting arbitration on the ground that no agreement to arbitrate exists must submit sufficient evidentiary facts in support of this claim. . . .").
 III.
The Catos further allege that the claims asserted in this case are outside the scope of the arbitration provision. Specifically, the provision states that the parties agree "to arbitrate any and all disputes arising under thisagreement. . . ." The Catos contend that this language is narrow and indicates that the agreement to arbitrate covers a limited range of disputes that arise under the terms of the purchase agreement itself. The claims for damages in their complaint, they maintain, do not arise under the terms of the purchase agreement. *Page 7 
In interpreting an arbitration provision, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem athand is the construction of the contract language itself
or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. MercuryConstr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927,74 L.Ed.2d 765 (1983) (emphasis added; footnote omitted). "Thus, a motion to compel arbitration should not be denied `unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' United Steelworkers ofAmerica v. Warrior Gulf Navigation Co.,363 U.S. 574, 582-83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (I960)." Exparte Colquitt, 808 So.2d 1018, 1024 (Ala. 2001) (emphasis added).
As this Court explained in Koullas v. Ramsey,683 So.2d 415, 416 (Ala. 1996), the phrase "arising under" in an arbitration agreement contemplates a harrow scope of operation. In Koullas, the plaintiff, Ramsey, entered into a contract in 1987 to sell and transfer to Koullas 60% of her stock in her business, Apparel Creations of America, Inc. The contract included an arbitration clause providing that disputes between the parties "`arising under this Agreement,'" 638 So.2d at 417, would be settled by arbitration. Several years after the transaction, Ramsey sued Koullas, alleging that as a corporate director of Apparel Creations, Koullas converted profits of the corporation for his personal gain, oppressed Ramsey's right to receive dividends, usurped Apparel Creations' corporate opportunities by using profits to establish and develop a separate corporation in which he was the sole shareholder, and breached his fiduciary duty as a corporate director. Koullas, 683 So.2d at 416.
Koullas moved to compel arbitration of Ramsey's claims pursuant to the arbitration clause contained in the 1987 contract. Ramsey argued that her claims did not "arise under" the terms of that contract and were therefore not subject to the arbitration provision. The trial court denied the motion to compel arbitration, and Koullas appealed.
This Court noted:
 "Where, as here, an arbitration clause refers to disputes or controversies `arising under' an agreement, the clause will apply only to those claims arising under the terms of the agreement, and it will not extend to matters or claims independent of, or merely collateral to, the agreement. We agree that, in order for a dispute to be characterized as arising out of or relating to the subject matter of the contract, and thus subject to arbitration, it must at the very least raise some issue that cannot be resolved without a reference to or construction of the contract itself."
Koullas, 683 So.2d at 417-18 (citation omitted). We went on to hold that Ramsey's claims against Koullas as a corporate director did not require reference to or a construction of the 1987 contract:
 "Nothing in the contract addresses the manner and method by which Apparel Creations was to be managed after the sale of the stock. It does not name Koullas as a corporate director, and it does not even mention how the shareholders would be involved within the corporation. It does not address the amount of salaries, commissions, or dividends that would be paid to corporate officials or stockholders. It is silent as to any duties or responsibilities that the parties would owe to the corporation after the sale and transfer of the stock. Simply put, every term of the contract relates exclusively to some aspect of the *Page 8 
one-time sale of corporate stock, which was completed in 1987, before Koullas even became a corporate director of Apparel Creations.
 "If Ramsey was alleging any wrong-doing in the making of the sales contract or in its performance, or was alleging violation of its provisions, then Ramsey's claims might reasonably be said to `arise under' the contract and therefore be subject to the limited arbitration clause contained therein. As it is, Ramsey's allegations against Koullas arise solely from his actions as a corporate director, not as a buyer of stock under the sales contract."
Koullas, 683 So.2d at 418.
As in Koullas, we must examine the individual claims in the complaint to determine whether the dispute "arises under" the purchase agreement. The defendants argue on appeal that the Catos are attempting to "circumvent the contract and its arbitration provision by couching their complaint in terms of tort and implied contract" and are "careful to avoid any mention of the [Purchase] Agreement in their complaint." (Appellants' brief at 10, 6.) The Catos claim that they have simply elected to "forgo" claims under the contract to "avoid arbitration." (Catos' brief at 17.)
In determining the nature of a cause of action, this Court looks to allegations in the body of the complaint, not the caption or label the party applies. Rutley v. CountrySkillet Poultry Co., 549 So.2d 82, 84 (Ala. 1989) ("[A] caption to a pleading is only the label by which to identify it and is not the determining factor of what the pleading actually is or what it states. A court must look to the allegations in the body of the complaint in order to determine the nature of a plaintiffs cause of action."). The substance of the plaintiffs allegations control, not the effort given by the plaintiff to style the claims throughout litigation. Baileyv. Faulkner, 940 So.2d 247, 253 (Ala. 2006) ("Faulkner places great reliance on the fact that he has been careful tostyle his claims throughout this litigation as negligence and wantonness claims, rather than as an alienation-of-affections claim. However, `[t]his Court has always looked to substance over form.' Southern Sash Sales Supply Co. v. Wiley, 631 So.2d 968, 971 (Ala. 1994)." (footnote omitted)).
Count I of the Catos' complaint, styled "promissory fraud," alleges that in June 2003 the Catos discussed with Elizabeth Homes the "possibility" of constructing a house on their property. It alleges that Elizabeth Homes orally represented-that it would build the house "to the same standards as" a model home, that these representations were false, and that Elizabeth Homes never intended to construct the house to the same standards as the model home. Although not stated directly, it appears that the complaint alleges that the house, as built, did not conform to the standards of the model home. As a result, the Catos allege that they suffered "annoyance, inconvenience, mental anguish," and they allege that the value of the house is less than it should be. Additionally, the Catos allege in Count II of the complaint that these representations created an "oral warranty" that Elizabeth Homes breached.
The purchase agreement states that Elizabeth Homes would build a "Standard Seville[3] model in substantial conformity with plans and specifications" and recites that the Catos, as purchasers, understand *Page 9 
that Elizabeth Homes would perform the scope of work shown in certain plans and specifications. The purchase agreement further contains a merger or integration clause, which states that the purchase agreement constitutes "the entire contract" and that there are no other oral or written promises or agreements except those set forth in certain documents named in the purchase agreement. Elizabeth Homes argues that the purchase agreement specifies how the house is to be built, and any claim that the house did not conform to a party's expectation must therefore arise under that agreement.
The Catos first argue that Elizabeth Homes has not proven that their claim arises under the purchase agreement. Instead, they argue: "The complaint specifically alleges an oral representation. [Elizabeth Homes] offered no evidence to establish the claim is based on a written contract." (Catos' brief at 22.) The Catos, however, misunderstand the respective burdens. As discussed above, it is the Catos'burden to demonstrate that the arbitration agreement in the purchase agreement does not apply to this dispute. However, the Catos presented no evidence in opposition to the motion to compel arbitration indicating that Elizabeth Homes had entered into an agreement, whether oral or written, outside the purchase agreement. Additionally, there is no evidence indicating that Elizabeth Homes or its agents made any oral representations to the Catos that differ from the specifications stated in the purchase agreement. Therefore, the Catos failed to meet their burden of showing that the arbitration provision in the purchase agreement does not apply to their claim that the house did not conform to their expectations.
The purchase agreement, as noted above, states that the house will conform to certain specifications and plans. Any claim by the Catos that the house deviated from the specifications or design they agreed to with Elizabeth Homes thus "arises under" the purchase agreement.
The Catos, citing National Auction Group, Inc. v.Hammett, 854 So.2d 65 (Ala. 2003), argue that they are the "masters" of the complaint, that the complaint alleges "an oral representation," and that this Court cannot assume that the Catos must be suing under the purchase agreement.Hammett, however, is inapposite. In that case, a defendant attempted to compel arbitration of the plaintiffs claims pursuant to an arbitration provision found in a contract between two defendants. This Court refused the attempt to compel arbitration, noting that the complaint expressly alleged that the defendants had breached a different contract, and it did not allege a breach of the contract containing the arbitration provision. Hammett, 854 So.2d at 70.
In Hammett, the plaintiff was not a party to the contract that contained an arbitration provision; instead, the plaintiff was suing based on the alleged breach of a different contract. In the instant case, the Catos presented noevidence indicating that they were parties to a contract or agreement with Elizabeth Homes other than the purchase agreement. Indeed, the Catos do not even deny that they entered into the purchase agreement. Thus, Hammett is inapplicable.
In Counts III, IV, V, and VI of the complaint, the Catos allege that Elizabeth Homes was negligent and wanton in constructing the house and setting the elevation of the house. Specifically, the complaint alleges that Elizabeth Homes "undertook to construct a home" and "locate or set the elevation" but negligently and wantonly "performed th[ese] undertaking[s]." The Catos allege that Elizabeth Homes' duty to exercise care in building *Page 10 
the house and setting the elevation arises by operation of law and is independent of any contractual duty Elizabeth Homes might have had. The "arise under" language of the arbitration provision, the Catos conclude, does not extend to disputes that are independent of or collateral to the purchase agreement.
Even assuming that the Catos are correct in arguing that Elizabeth Homes' duty to not act negligently or wantonly in constructing and setting the elevation of the house is a duty imposed by law and not by the purchase agreement, we are hard-pressed to nevertheless accept that the claims do not "arise under" the purchase agreement. As noted above, Elizabeth Homes undertook to construct a house for the Catos pursuant to the purchase agreement. The Catos claim that Elizabeth Homes breached certain standards of care in building that house. While the standard of care to which Elizabeth Homes was required to adhere may have arisen by operation of law or outside the purchase agreement, Elizabeth Homes' duty to actually build the house and set the elevation clearly arises under the purchase agreement, which provides the specifications and standards for constructing the house. In any event, it is "`well established that a party may not avoid broad language in an arbitration clause by attempting to cast its complaint in tort rather than contract.'" Beaver Constr. Co. v.Lakehouse, L.L.C., 742 So.2d 159, 165 (Ala. 1999) (quotingMcBro Planning Dev. Co. v. Triangle Elec. Constr.Co., 741 F.2d 342, 344 (11th Cir.1984)). See also ECS,Inc. v. Goff Group, Inc., 880 So.2d 1140 (Ala. 2003) (holding that a finance company's claims against an underwriter must be arbitrated pursuant to a provision requiring arbitration of claims "arising out" of a contract, even though the finance company stated its claims in tort rather than in contract and the finance company was not a signatory to the contract). It appears that the Catos' claims are essentially claims of a breach of the purchase agreement styled as tort claims. We thus hold that the Catos failed to demonstrate that these claims do not arise under the terms of the purchase agreement.
Counts VII and VIII of the complaint allege that after the house was constructed, an agent of Elizabeth Homes came to check certain "electrical issues." The Catos claim that, while performing the work, the agent negligently and wantonly damaged part of the vinyl flooring in the house when the agent moved their tanning bed. The Catos argue that these claims are not arbitrable because, they say, the defendants did not prove that the claims were related to the purchase agreement, there was no evidence to establish that Elizabeth Homes' agent was performing a service under a warranty, and even if the work is considered work under a warranty or the purchase agreement, they could still allege a tort claim separately from the contract.
The defendants argue that the damage to the floor occurred either during the course of the construction or during the course of repairs made pursuant to a warranty provision found in the purchase agreement.[4] Thus, they maintain, the claims asserted in Counts VII and VIII arise under the purchase agreement.
Again, it was the Catos' burden to show that the arbitration provision does not apply to these claims. There is no evidence indicating that Elizabeth Homes' agent, in *Page 11 
checking "electrical issues," was performing work outside the purchase agreement or pursuant to some other contract or agreement. For all that appears from the record, this work was performed pursuant to, and under the terms of, the purchase agreement. We thus conclude that the Catos have not proven that these claims fall outside the scope of the arbitration provision.
In Count IX, the Catos claim that the defendants breached an implied contract to construct the house in a "good and workmanlike manner." The Catos maintain that this claim is based on an implied, not an express, contract, and that the defendants presented no evidence to show that the Catos' claim was based on the purchase agreement. In Counts X and XI the Catos appear to allege that the defendants breached a contract and committed promissory fraud in failing to complete repairs pursuant to a "punch list." Specifically, they claim that as they were preparing to move into the house, they presented Elizabeth Homes with a list of problems, defects, or incomplete work in the house. They state: "[I]n order to induce the plaintiff's to pay the defendants the balance due for the home, the defendants promised and contracted to complete the items on the punch list."
As to all three counts, the Catos have again failed to present any evidence showing that the arbitration provision in the purchase agreement does not apply. There is no evidence indicating that the parties entered into an implied contract outside the purchase agreement or that a separate contract was created based on the "punch list." Furthermore, these claims all appear to revolve around alleged deficiencies in the construction of the house. Because the duty to construct the house, and the specifications describing that duty, were all imposed by the purchase agreement, we cannot conclude with "positive assurance" that the Catos' claims do not fall under the terms of the purchase agreement or within the scope of its arbitration provision.
 Conclusion
We hold that the defendants have met their burden in supporting their motion to compel arbitration, and the Catos failed to demonstrate that the arbitration provision in the purchase agreement does not apply in this case. Therefore, the trial court erred in denying the motion to compel. The trial court's order is reversed, and the case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and SEE, WOODALL, and PARKER, JJ., concur.
[1] Flanagan's affidavit in support of the motion to compel arbitration detailed that the materials used to construct the house were specially ordered for Elizabeth Homes by Elizabeth Homes' supplier from numerous out-of-state sources. Evidence that a builder obtained materials and components for a house from out-of-state suppliers is sufficient to establish that a transaction for the construction and sale of a house sufficiently involved interstate commerce for purposes of the FAA. Elizabeth Homes, L.L.C. v. Gantt, 882 So.2d 313,315-17 (Ala. 2003).
[2] This Court applies, by analogy, the practice under Rule 56, Ala. R. Civ. P., dealing with summary-judgment motions, to motions to compel arbitration. Ex parte Greenstreet,Inc., 806 So.2d 1203, 1207 (Ala. 2001).
[3] It appears that "Standard Seville" is the name of one of the styles of house that Elizabeth Homes offers.
[4] The provision cited by the defendants actually states that any liability on Elizabeth Homes' part for a breach of the contract will be limited to the actual cost of repairing or correcting the breach.