SHAW, Justice.[1]
The defendant below, Assurant, Inc. (“Assurant”), appeals from the trial court’s denial of its motion to compel arbitration of the claims asserted against it by the plaintiff, Debra A. Mitchell. We reverse and remand.

Facts and Procedural History

In 2000, Mitchell purchased a manufactured home from Grand Luxor Homes, Inc. (“Grand Luxor”). In connection with the purchase, Mitchell received a comprehensive manufactured-home insurance policy issued by American Bankers Insurance Company of Florida (“American Bankers”), a wholly owned subsidiary of Assu-rant. The policy contained an arbitration provision that provided, in pertinent part:
“Any and all disputes, controversies or claims of any kind and nature between YOU and US arising out of or in any way related to the validity, enforceability, interpretation, performance or breach of any provision of this policy, including this arbitration provision, and upon which a settlement has not been reached by YOU and US, shall be resolved, exclusively, by arbitration in accordance with the Federal Arbitration Act (9 U.S.C. Section 1 Et Seq.).”
(Capitalization in original.) The policy defined “YOU” as “the person named on the Declarations Page and that person’s husband or wife who lives in the same MANUFACTURED HOME as the named insured,” and further stated that “US” “always means American Bankers Insurance Company of Florida.” (Capi *1173 talization in original.) Although Assurant is the parent company of American Bankers, Assurant acknowledges that it was not a signatory to Mitchell’s policy, which was renewed every year.
After her manufactured home allegedly suffered wind and water damage, Mitchell made numerous claims under the policy. Correspondence in the record indicates that several of Mitchell’s claims were denied because the adjuster determined that the alleged damage was not covered by the policy. All the claim-related correspondence directed to Mitchell bore either the names “Assurant Group” and “American Bankers Insurance Company of Florida” or the heading “American Bankers Insurance Company of Florida” with a designation that the corresponding claims adjuster was affiliated with “Assurant Claims.”
Following the denial of her claims, Mitchell sued Assurant; Edwin Edwards, who Mitchell alleged was an agent of Assu-rant; Grand Luxor; and Destiny Industries, LLC (“Destiny”), the manufacturer of Mitchell’s manufactured home. In her complaint, Mitchell alleged that, on August 31, 2006,[2] she
“had either a contract of insurance with Assurant Inc., by and through its subsidiary American Bankers Insurance Company of Florida, or was the third-party beneficiary of a contract between American Bankers and Assurant, either of which required, among other things, that Assurant would provide benefits as descxibed in [Mitchell’s] policy of insurance with American Bankers in return for the premium which [she] paid and which was ultimately received by Assu-rant.”
Mitchell asserted numerous claims against Assurant, including breach of contx*act and bad-faith refusal to pay a claim; claims of fraud based on statements allegedly made to her by representatives of Assurant; claims of fraudulent suppression based on facts that, she claims, were not disclosed to her by Assurant; and a negligence claim related to Assurant’s inspections of the damaged manufactured home.
Assurant filed a motion to compel Mitchell to arbitrate her claims under the arbitration provision in the policy and supported that motion with evidentiary exhibits. Mitchell filed a response, which was also supported with evidentiary exhibits. Thereafter, the parties filed several supplemental pleadings and evidentiary exhibits in support of their respective positions.
On May 29, 2007, the trial coui't denied Assurant’s motion to compel arbitration; subsequently, the trial court vacated this initial denial because of an apparent issue as to notice to one of the parties. The trial court conducted a hearing on Assu-rant’s motion to compel, and on September 4, 2007, entered an order again denying Assurant’s motion. Assurant appeals.

Standard of Revieiv

“ ‘[T]he standard of review of a trial court’s ruling on a motion to compel arbitration at the instance of either party is a de novo determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review.’ Ex parte Roberson, 749 So.2d 441, 446 (Ala.1999). Furthermore:
“ ‘A motion to compel arbitration is analogous to a motion for summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala.1999). The party seeking to compel arbiti'ation has the burden of proving the existence of a contract calling for arbi *1174 tration and proving that that contract evidences a transaction affecting interstate commerce. Id. “After a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.” ’
“Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala.2000) (quoting Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala.1995) (emphasis omitted)).”
Vann v. First Cmty. Credit Corp., 834 So.2d 751, 752-53 (Ala.2002).

Discussion

I.

“The Federal Arbitration Act, 9 U.S.C. § 1 et seq. (‘the FAA’), provides that ‘[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable .... ’ 9 U.S.C. § 2. The FAA ‘mandates the arbitration of claims encompassed by an arbitration clause that is contained in a binding contract that involves interstate commerce.’ Ex parte Conference America, Inc., 713 So.2d 953, 955 (Ala.1998).”
Elizabeth Homes, L.L.C. v. Cato, 968 So.2d 1, 3-4 (Ala.2007).[3]
In support of its motion to compel arbitration, Assurant argued that it was entitled to enforce the arbitration provision in the policy both because public policy favors arbitration and because, it said, “[a]ll of [Mitchell’s] claims against Assurant specifically arise out of, relate to and are based or otherwise dependent upon the manufactured home policy issued by American Bankers.” Assurant denied any involvement in the handling of Mitchell’s claims. In support of that denial, Assurant submitted the affidavit of Jessica M. Olich, vice president and corporate counsel for Assu-rant, in which Olich testified that there was no agreement between Assurant and American Bankers that would allow Assu-rant to adjust claims filed under a policy issued by American Bankers. Relying on the “by and through” language in Mitchell’s complaint, Assurant further argued below, as it does on appeal, that Mitchell alleged that American Bankers was either acting as the agent of Assurant or that Assurant was the alter ego of American Bankers.
Assurant produced substantial evidence showing the existence of an agreement to arbitrate. Vann, supra. Therefore, the burden then shifted to Mitchell to present evidence indicating that the arbitration provision did not apply to her claims against Assurant.
Mitchell argues on appeal that her claims against Assurant are separate and distinct from any potential claims she may have against American Bankers and are based on “things Assurant said and did outside of any policy of insurance with American Bankers.” Mitchell’s brief, at 7. She further contends that she does not “seek [from Assurant] the insurance benefits available to her under the policy with American Bankers.” Id., at 2. Mitchell also specifically denies that she has alleged that Assurant is the principal of American Bankers and maintains that she has not alleged that Assurant is the alter ego of American Bankers. We disagree.
*1175 The substance of Mitchell’s complaint controls in determining the claims alleged therein.
“The substance of the plaintiffs allegations control, not the effort given by the plaintiff to style the claims throughout litigation. Bailey v. Faulkner, 940 So.2d 247, 253 (Ala.2006) (‘Faulkner places great reliance on the fact that he has been careful to style his claims throughout this litigation as negligence and wantonness claims, rather than as an alienation-of-affections claim. However, “[t]his Court has always looked to substance over form.” Southern Sash Sales & Supply Co. v. Wiley, 631 So.2d 968, 971 (Ala.1994).’ (footnote omitted)).”
Elizabeth Homes, 968 So.2d at 8. Further, “a plaintiff is in control of his or her complaint, [and] we [therefore] accept [the plaintiffs] allegations on their face.” National Auction Group, Inc. v. Hammett, 854 So.2d 65, 70 (Ala.2003).
Mitchell’s complaint explicitly alleges that Assurant was acting “by and through” American Bankers, that Assurant would “provide [the] benefits as described in [Mitchell’s] policy of insurance with American Bankers,” and that her policy premiums would ultimately be received by Assu-rant. It states that Mitchell
“had either a contract of insurance with Assurant Inc., by and through its subsidiary [4] American Bankers Insurance Company of Florida, or was the third-party beneficiary of a contract between American Bankers and Assurant, either of which required, among other things, that Assurant would provide benefits as described in [Mitchell’s] policy of insurance with American Bankers in return for the premium which [she] paid and which was ultimately received by Assu-rant.”
(Emphasis added.)
Further, Mitchell’s use in the complaint of the phrase “by and through” evokes Ala.Code 1975, § 6-5-300,[5] which “permits] a party to be named in the complaint as the actor and then allow the proof to show the acts alleged to have been committed by the named party were actually committed by an agent.” Prickett v. Little, 47 Ala.App. 166, 169, 252 So.2d 93, 96 (1971). See also Sibley v. Adams, 56 Ala.App. 572, 576, 324 So.2d 287, 289 (1975) (“Under [the predecessor statute to § 6-5-300] it is permissible in any case to aver that defendant committed an act and at trial prove that the act was committed by or through an agent, servant or employee acting within the line and scope of his employment.”). Despite her arguments to the contrary, Mitchell has, in fact, alleged an agency or alter ego relationship between Assurant and American Bankers.
In Jim Walter Homes, Inc. v. Spraggins, 853 So.2d 913 (Ala.2002), this Court held that a parent corporation, as an “alter ego” of the subsidiary, could invoke an arbitration provision found in a contract between the plaintiff and the subsidiary even though the parent corporation was not a signatory to the underlying contract. *1176 Discussing Ex parte Gray, 686 So.2d 250 (Ala.1996), this Court stated:
“[In Gray,] this Court recognized that a party who had entered into an arbitration agreement with a car dealership could not avoid arbitration by suing an agent of the dealership who was not a signatory to the agreement. Federal courts that have addressed the issue have recognized that the alter ego of a signatory to an arbitration agreement is entitled to compel its enforcement. See Employers Ins. of Wausau v. Bright Metal Specialties, Inc., 251 F.3d 1316, 1322 (11th Cir.2001); and Fisser v. International Bank, 282 F.2d 231, 234 (2d Cir.1960).”
853 So.2d at 919-20. Cf. Stevens v. Phillips, 852 So.2d 123, 131 (Ala.2002) (holding that because the plaintiffs claims against an employee arose out of representations by the employee “while she was acting as an agent within the line and scope of her employment with Southern Homes,” for purposes of the case, the employee “ ‘stands in the shoes’ ” of her principal); Lee v. YES of Russellville, Inc., 784 So.2d 1022, 1027 (Ala.2000) (“[I]f an agent acting within his authority enters a contract on behalf of an undisclosed principal, the agent is liable on the contract ...; the undisclosed principal is also liable.”); and McDougle v. Silvernell, 738 So.2d 806, 809 (Ala.1999) (concluding that a closing attorney, as an agent of a title-insurance company, had standing to enforce an arbitration provision contained in a title-insurance policy as to claims of the purchaser despite the fact that he was not a party to the insurance policy).
Mitchell’s complaint alleges that there was an agency relationship or a parent-subsidiary relationship between Assurant and American Bankers. Further, the correspondence that Mitchell submitted in opposition to Assurant’s motion bolsters the allegation of an agency or alter ego relationship, as it clearly bears the names of both Assurant and American Bankers. In her brief to this Court, Mitchell attempts to distinguish the agency/alter ego cases cited by Assurant; however, we note that Mitchell does not provide any evidence, and does not cite any authority, in support of her own position that she has not alleged the existence of either relationship. We thus see no merit in Mitchell’s argument, especially in light of the language in her complaint. Because of the relationship between Assurant and American Bankers, Assurant is entitled to enforce the arbitration-provision in Mitchell’s insurance policy with American Bankers. Spraggins, supra.

II.

Mitchell next argues that, even if we decide that Assurant is entitled to enforce the arbitration provision, her claims do not arise under the American Bankers insurance policy; however, we are unpersuaded by her argument.
“ ‘In interpreting an arbitration provision, “any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.” ’ The Dunes of GP, L.L.C. v. Bradford, 966 So.2d 924, 927 (Ala.2007) (quoting Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)) (emphasis omitted). Indeed, ‘ “a motion to compel arbitration should not be denied ‘unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.’ ” ’ Id. (quoting Ex parte Colquitt, 808 So.2d 1018, 1024 (Ala.2001), quoting in turn United Steelworkers of *1177 America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)) (emphasis omitted). ‘While, “as with any other contract, the parties’ intentions control, ... those intentions are generously construed as to issues of arbitrability.” ’ Carroll v. W.L. Petrey Wholesale Co., 941 So.2d 234, 237 (Ala.2006) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).”
Kenworth of Mobile, Inc. v. Dolphin Line, Inc., 988 So.2d 534, 545 (Ala.2008).
“ ‘[I]n order for a dispute to be characterized as arising out of or relating to the subject matter of the contract, and thus subject to arbitration, it must at the very least raise some issue that cannot be resolved without a reference to or construction of the contract itself.’ ”
Elizabeth Homes, 968 So.2d at 7 (quoting Koullas v. Ramsey, 683 So.2d 415, 418 (Ala.1996)).
Although Mitchell argues that her claims against Assurant arise from statements, advice, and actions by Assurant independent of the denial of her claims under the insurance policy, the thrust of Mitchell’s complaint is that Assurant, as the principal or alter ego of American Bankers, breached the insurance policy issued to her by American Bankers and engaged in the complained-of conduct while performing duties that arose under that policy. Compare Ex parte Gray, 686 So.2d at 251. Mitchell’s dispute relates directly to the adjustment procedures and ultimate outcome of the claims process, which she initiated pursuant to her policy with American Bankers. There is no evidence indicating that Assurant was in any way acting outside the insurance policy. Therefore, there is no merit in this argument.[6]

III.

Assurant also contends that it is entitled to enforce the arbitration provision as a nonsignatory under the doctrine of equitable estoppel, or “intertwining,” and as a third-party beneficiary to the insurance policy. In response, Mitchell argues, pointing to the language in the arbitration provision specifically naming American Bankers as the only other party to the agreement, that neither of those two doctrines is available when: (1) in the case of equitable estoppel, the language of the arbitration provision precludes a nonparty from seeking arbitration, and (2) in the case of a third-party beneficiary, the intent to impose the benefit on the third party is not indicated by the language in the contract. Ex parte Stamey, 776 So.2d 85 (Ala.2000); see also First Family Fin. Servs., Inc. v. Rogers, 736 So.2d 553 (Ala.1999) (holding that the language of an arbitration provision limiting the parties did not allow the application of the doctrine of equitable estoppel to compel arbitration by nonparty), and Smith v. Mark Dodge, Inc., 934 So.2d 375, 380 (Ala.2006) (noting that there is an exception to the equitable estoppel rule requiring the arbitration provision to contain sufficiently broad language indicating that the nonsig-natory was contemplated as a party). However, because of our rationale in Part I above, we pretermit discussion of this issue.[7]

*1178
Conclusion

We conclude that Mitchell has failed to present any evidence showing that the arbitration provision in the insurance policy does not apply to her claims against Assu-rant. Furthermore, all the claims alleged in Mitchell’s complaint appear to revolve around her dissatisfaction with the claims process outlined in that policy and Assu-rant’s performance with regard to the claims process, which performance was undertaken pursuant to the policy. Therefore, the trial court erred in denying Assu-rant’s motion to compel, and we reverse the order denying that motion and remand the cause for the entry of an order compelling Mitchell to arbitrate her claims against Assurant.
REVERSED AND REMANDED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ, concur.

. This case was originally assigned to another Justice on this Court; it was reassigned to Justice Shaw.

. This date represents the issue date of a letter denying Mitchell’s August 26, 2006, claim for “water damage” related to the leaking roof of her manufactured home.

. There is no dispute below or on appeal as to whether the transaction in this case involved interstate commerce for purposes of whether the Federal Arbitration Act applies in this case.

. "Subsidiary” is defined in Black's Law Dictionary as being "[u]nder another's control.” The entry further indicates that the term is often used to refer toa" ‘subsidiary corporation’; i.e. one that is run and owned by another company which is called the 'parent.' ” Black’s Law Dictionaiy 1428 (6th ed. 1990).

. Alabama Code 1975, § 6-5-300, provides:
"In any civil action, it shall be permissible to allege in any pleading that any party or parties committed an act, and proof that any such party or parties committed such act by or through an agent, servant, or employee acting within the line and scope of his employment shall be sufficient proof of such allegation ....”
(Emphasis added.)

. Mitchell also argues that the door-closing statute, Ala.Code 1975, § 10-2B-15.02, invalidates the insurance policy — and its arbitration provision — because American Bankers was allegedly not qualified to do business in Alabama at the time the policy was issued. This argument is without merit, in that the record indicates that American Bankers was in fact qualified to do business in Alabama at the time the insurance policy here was issued.

. Mitchell does not argue on appeal that the language of the arbitration provision prevents
*1178 Assurant from invoking arbitration under the agency and alter ego principles discussed above.