COOK, Justice.
The Cadle Company appeals from a judgment in favor of Barbara Friedman in Cache's action seeking to recover money due pursuant to a note and a lease executed by Friedman and to repossess a crane that had served as collateral.
On June 7, 1984, Swaland, Inc., purchased for $110,000 a “35-ton hydraulic truck crane” from Industrial Steel Erectors, Inc. Apparently, the purchase was, at least in part, financed by the First State Bank of Atmore (“FSB”).
On September 1, 1984, Swaland leased the crane to Dixie Steel and Supply Company, Inc. (“Dixie”). The lease agreement (“the Swaland-Dixie lease”) required Dixie to pay Swaland $3,170 per month for 48 months. The same day, Swaland assigned to FSB its rights as Dixie’s lessor (“the Swaland-FSB assignment”).
On January 14, 1986, Swaland gave FSB a promissory note in the face amount of $92,-544.46 (“the Swaland note”). The note purported to be secured by collateral described as' follows: “UCC-1 A1 Dated January 15, 1985, securing Equipment. Filed with Secretary of State.” The note required Swaland to pay FSB $2,732.65 per' month for 11 months, and, in the 12th month, $62,485.31.
On July 29, 1986, Barbara Friedman executed an instrument (“the Dixie-Friedman assignment”) in which she assumed Dixie’s obligations under the Swaland-Dixie lease. On January 30, 1987, Friedman executed a promissory note (“the Friedman note”), under which she was to pay FSB $2,732.65 per month for 11 months and, in the 12th month, $37,698.31. The note listed as security, “equipment,” which was described as “one 30-ton grove cherry picker RT635, serial # 20394-92' boom 24" Jim.”
Between January 30, 1987, and July 1987, under an arrangement and procedures that are not clearly set out in the record, the obligations, assets, and management of FSB were assumed by two financial entities: (1) the Federal Deposit Insurance Corporation (“FDIC”), and (2) the First National Bank of Atmore (“FNB”). During this period, one or both of these entities elected to sell some of the FSB assets that existed in the form of notes and comparable obligations. By the end of 1990, all the obligations to the financial institutions were in default and Swaland and Dixie had sought protection in bankruptcy.
In December 1990, Cadle purchased certain assets from the FDIC. The transaction was evidenced, in part, by a bill of sale containing the following pertinent provisions:
“The Federal Deposit Insurance Corporation ... does hereby sell, assign and convey to [Cadle] and its assignees, without recourse, warranty, representations or covenants whatsoever all right, title and interest in the assets and related docu- *964 merits transferred pursuant to the Agreement and listed in the Schedule of Assets attached hereto, which Schedule of Assets contains 2 pages of individually identified assets in the outstanding aggregate book value, as set forth in the Schedule of Assets, of $1,328,060.30.”
Among the obligations allegedly purchased were (1) the Swaland-Dixie lease, (2) the Swaland-FSB assignment, (3) the Swaland note, (4) the Dixie-Friedman assignment, and (5) the Friedman note.
On April 15, 1991, Cadle sued Friedman, alleging that it was entitled to the money due under the Dixie-Friedman assignment and the Friedman note. Cadle amended its complaint on June 15, 1992, the first day of the bench trial of the case, to allege a right to recover the crane from Friedman.
After receiving ore tenus evidence, the trial judge held that Cadle was not entitled to enforcement of the Friedman note, because, he concluded, Cadle had failed to prove that the Friedman note was included in the assets that Cadle had purchased from the FDIC. However, the judge held that Cadle had sufficiently proven its ownership of the Dixie-Friedman assignment, and, on that basis, awarded Cadle possession of the crane, plus $47,550 ($3,170 x 15) in rental payments.
Subsequently, both parties filed motions to alter or amend the judgment. On November 3, 1992, the trial judge, finding, he stated, “a gap in the proof presented by [Cadle] as to ownership of the lease agreement,” granted Friedman’s motion, setting aside the award to Cadle and entering a judgment in favor of Friedman on all claims. From that judgment, Cadle appealed.
The parties agree that the disposition of this case turns on the proper resolution of a number of contested factual allegations. The issue, therefore, may be stated broadly as whether the record supports the trial court’s finding of a “gap” in Cadle’s proof of ownership of the obligations under which it seeks to recover from Friedman. Accordingly, our review of this judgment is governed by the ore tenus rule.
When the trial court, without a jury, receives ore tenus evidence, it “determines the weight and credibility of the testimony, and its findings are presumed correct and will not be disturbed on appeal unless the record reveals the [findings] to be plainly and palpably wrong or manifestly unjust.” Wheeler v. Marvin’s, Inc., 593 So.2d 61, 63 (Ala.1991). “The trial court’s judgment in such a ease will be affirmed, if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment.” Clark v. Albertville Nursing Home, Inc., 545 So.2d 9, 12-13 (Ala.1989). Friedman contends that the application of this rule of review requires affirmance of the judgment. For the following reasons, we agree.
First, it was disputed whether either financial institution ever received or accepted the Friedman note, ownership of which was a prerequisite to the institution’s right to assign it to Cadle. In this connection, Friedman testified: “To my knowledge, nothing ever happened with that note. It was like I submitted it and it vanished.” Indeed, there was evidence that Friedman had, on June 5, 1987, sent to FNB a check in the amount of $8,197.95 representing a three-month payment pursuant to the Friedman note and that on July 10,1987, the FNB had returned the check, stating that the Friedman note had been “turned over” to the FDIC. The FDIC, however, in a letter dated June 5, 1989, addressed to Friedman’s attorney, stated that the FDIC had “researched its files and was unable to locate any information on the [Friedman note].”[1]
Also, the only original document Cadle presented at trial was the Swaland note.[2] The trial court’s judgment in favor of Friedman on all issues was apparently based, in part, on a finding that evidence consisting of copies of the Friedman note and of the Friedman assignment did not sufficiently establish ownership of the obligations.
*965 In this connection, the majority of trial time was consumed by Cadle’s proffer of, and Friedman’s objections to, the copies. Also significant were the factual disputations surrounding Cadle’s attempts to account for the absence of the original documents.
Moreover, the record does not clearly indicate whether the trial judge ultimately admitted all, or only some, of these copies. In any case, each copy that was admitted was admitted with the express reservation that its character would detract from its evidential value. We conclude that this evidence is not inconsistent with the trial court’s ultimate finding that a “gap” existed in Cadle’s proof of ownership of the disputed obligations and, therefore, that the trial court’s findings were not plainly and palpably wrong.[3]
This conclusion is also consistent with the rule according to which “it is presumed, when all of the evidence is presented ore tenus to the trial court and part of the evidence is missing from the record, that the missing evidence is sufficient to support the trial court’s judgment.” Smith v. Smith, 565 So.2d 72, 73 (Ala.1990). Thus, where the record does not clearly indicate which documents were admitted in evidence and considered by the trial judge, this Court is most reluctant in a case as factually complex as this one to substitute its judgment for that of the trial court. Consequently, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON, HOUSTON, STEAGALL and INGRAM, JJ., concur.

. Significantly, these communications preceded Cadle's December 1990 purchase of assets.

. That note, however, did not identify the crane. Instead, it referred only to a U.C.C. form “securing equipment.” No attempt was made to place in evidence the U.C.C. form.

. Because Cadle proffered only copies of the Friedman note and of the Dixie-Friedman assignment, the trial court’s findings are equally applicable to the purported assignments of both these obligations.