SELLERS, Justice.[1]
*601 Daphne Automotive, LLC, and its employee, Robin Sanders (hereinafter sometimes collectively referred to as "the dealership"), appeal from an order of the Baldwin Circuit Court denying their motion to compel arbitration of the claims filed against them by Eastern Shore Neurology Clinic, Inc. ("Eastern Shore"), and Rassan Tarabein. We affirm.
Facts and Procedural History
Rassan Tarabein is the owner of Eastern Shore. Tarabein also owns another company-Infotec, Inc. Tarabein hired his nephew, Mohamad Tarbin, as an employee of Infotec. As part of the nephew's compensation, Tarabein agreed to provide him with the use of a vehicle for as long as he was employed with Infotec. Accordingly, Tarabein purchased, through Eastern Shore, a 2014 Toyota RAV4 sport-utility vehicle ("the vehicle") from Daphne Automotive; the total purchase price was $25,000. Tarabein, the nephew, and the dealership agreed that the dealership would arrange for the vehicle to be titled in the nephew's name, but that Eastern Shore would be listed on the title as lienholder. In conjunction with the sale, the nephew signed a document entitled "Terms and Conditions," i.e., the sales contract, which contained the following arbitration provision:
"Buyer/lessee and dealer agree that all claims, demands, disputes or controversies of every kind or nature between them arising from, concerning or relating to any of the negotiations involved in the sale, lease, or financing of the vehicle, the terms and provisions of the sale, lease, or financing agreements, the arrangements for financing ..., the performance or condition of the vehicle, or any other aspects of the vehicle and its sale, lease, or financing shall be settled by binding arbitration in accordance with the procedure set forth on separate Arbitration Agreement form."
(Emphasis added.)
The stand-alone arbitration agreement referenced in the sales contract was signed by the nephew and the dealership and similarly provides:
"Buyer/lessee and dealer agree that all claims, demands, disputes or controversies of every kind or nature that may arise between them concerning any of the negotiations leading to the sale, lease or financing of the vehicle, terms and provisions of the sale, lease or financing agreement, arrangements for financing, purchase of insurance, purchase of extended warranties, or service contracts, the performance or condition of the vehicle, or any other aspects of the vehicle and its sale, lease, or financing shall be settled by binding arbitration conducted pursuant to the provisions of ( 9 U.S.C. Section 1 et seq. ). And according to the Commercial Rules of the Better Business Bureau of South Alabama, Inc. Without limiting the generality of the foregoing, it is the intention of the buyer/lessee and the dealer to resolve by binding arbitration all disputes between them concerning the vehicle, its sale, lease or financing and its *602 condition including disputes concerning the terms and conditions of the sale, lease or financing, the condition of the vehicle, any damage to the vehicle, the terms and meanings of any of the documents signed or given in connection with the sale, lease or financing[,] any representations, promises or omissions made in connection with the negotiations for the sale, lease or financing of the vehicle, or any terms, conditions, or representations made in connection with the financing, credit life insurance, disability insurance, and vehicle extended warranty of service contract purchased or obtained in connection with the vehicle.
"....
"Neither of us [is] committed by the terms of this agreement to arbitrate unless you sign below, in which event we will both be committed."
(Emphasis added.) The nephew also signed an Alabama Department of Revenue power-of-attorney form authorizing the dealership to apply for a certificate of title for the vehicle. Tarabein, on the other hand, executed only the documents to establish Eastern Shore as lienholder on the title for the vehicle.[2] The dealership thereafter submitted the application for the certificate of title, neglecting, however, to list Eastern Shore as the lienholder.
In January 2014, the Department of Revenue issued to the nephew an original certificate of title for the vehicle that listed no lienholders. In April 2014, Tarabein terminated the nephew's employment with Infotec. Tarabein made repeated requests for the nephew to return possession of the vehicle to Eastern Shore, but the nephew refused. In June 2014, Tarabein, believing Eastern Shore was listed as lienholder on the title for the vehicle, inquired of the dealership why he had not received the title to the vehicle. According to Tarabein, the dealership informed him that when it applied for the certificate of title it listed Eastern Shore as a lienholder. After investigating the matter further, the dealership informed Tarabein that the certificate of title for the vehicle had been mailed to the nephew's address. The dealership contacted the nephew, who denied that he had received the certificate of title for the vehicle. According to Tarabein, the dealership never informed him that it had failed to list Eastern Shore as a lienholder on the application for the certificate of title. Rather, he argues, after it became aware of its error, the dealership engaged in a fraudulent scheme of forging the nephew's name on the Department of Revenue power-of-attorney form in order to replace the original certificate of title with a certificate of title listing Eastern Shore as the lienholder. As a result, the nephew held an original certificate of title free and clear of any lienholder, and Eastern Shore held a reissued certificate of title for the same vehicle listing it as the lienholder. After Eastern Shore received its certificate of title, it engaged a towing company to repossess the vehicle. After the vehicle was repossessed and delivered to Eastern Shore, an officer from the Baldwin County Sheriff's Office appeared at Eastern Shore to arrest Tarabein. Tarabein was able to avoid arrest by producing the certificate of title listing Eastern Shore as the lienholder. According to Tarabein, the incident concerning the arrest was the first time he became aware of the possible existence of another certificate of title for the vehicle.
Tarabein and Eastern Shore (hereinafter collectively referred to as "the plaintiffs") sued the dealership, asserting against Daphne Automotive claims of *603 breach of contract, negligent and wanton supervision, and misrepresentation; against Sanders a claim of negligence; and against both claims of suppression, fraudulent inducement, and civil conspiracy, and seeking damages for mental anguish. The dealership moved to compel arbitration and to stay the litigation based upon the arbitration provision in the sales contract and the stand-alone arbitration agreement (hereinafter referred to collectively as "the arbitration agreements"), both of which the nephew had signed in conjunction with the sale of the vehicle. On September 12, 2016, the trial court entered an order denying the dealership's motion to compel arbitration. The dealership appeals pursuant to Rule 4(d), Ala. R. App. P.[3]
Standard of Review
"This Court's standard of review on an appeal from a trial court's order granting or denying a motion to compel arbitration is well settled. Bowen v. Security Pest Control, Inc., 879 So.2d 1139, 1141 (Ala. 2003). A direct appeal is the proper procedure by which to seek review of such an order, Rule 4(d), Ala. R. App. P., and this Court will review de novo the trial court's grant or denial of a motion to compel arbitration. Bowen, 879 So.2d at 1141. The party seeking to compel arbitration has the initial burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction involving interstate commerce. Polaris Sales, Inc. v. Heritage Imports, Inc., 879 So.2d 1129, 1132 (Ala. 2003). The party seeking to compel arbitration must present some evidence tending to establish its claim. Wolff Motor Co. v. White, 869 So.2d 1129, 1131 (Ala. 2003). Once the moving party meets that initial burden, the party opposing arbitration has the burden of presenting evidence tending to show that the arbitration agreement is invalid or that it does not apply to the dispute in question. Bowen, 879 So.2d at 1141. See also Title Max of Birmingham, Inc. v. Edwards, 973 So.2d 1050, 1052-53 (Ala. 2007)."
Alabama Title Loans, Inc. v. White, 80 So.3d 887, 891-92 (Ala. 2011).
Discussion
At the outset, we note that the parties do not dispute that the underlying transaction involves interstate commerce. They do, however, dispute the existence of a contract calling for arbitration of the plaintiffs' claims against the dealership insofar as the plaintiffs did not sign the arbitration agreements. It is well established that " ' " '[a]rbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " ' " Custom Performance, Inc. v. Dawson, 57 So.3d 90, 97 (Ala. 2010) (quoting Central Reserve Life Ins. Co. v. Fox, 869 So.2d 1124, 1127 (Ala. 2003), quoting in turn AT & T Techs., Inc. v. Communications Workers of America, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), quoting in turn United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) ). "A party typically manifests its assent to arbitrate a dispute by signing the contract containing the arbitration provision." Smith v. Mark Dodge, Inc., 934 So.2d 375, 380 (Ala. 2006).
There are, however, exceptions to the general rule that nonsignatories to an arbitration provision cannot be compelled to arbitrate their claims. In this case, the dealership relies on the third-party-beneficiary *604 and equitable-estoppel exceptions.
"[T]he third-party-beneficiary exception ... provides that '[a] nonsignatory can be bound to an arbitration agreement if "the contracting parties intended, upon execution of the contract, to bestow a direct, as opposed to incidental[,] benefit upon the third party." ' Custom Performance, [Inc. v. Dawson,] 57 So.3d [90] at 97 [ (Ala. 2010) ] (quoting Dunning v. New England Life Ins. Co., 890 So.2d 92, 97 (Ala. 2003) ). [Another] exception is closely related and provides that a nonsignatory to a contract having an arbitration agreement will be treated as a third-party beneficiary of the contract regardless of whether the nonsignatory meets the legal definition of a third-party beneficiary 'when he or she asserts legal claims to enforce rights or obtain benefits that depend on the existence of the contract that contains the arbitration agreement.' Custom Performance, 57 So.3d at 98 (emphasis omitted). This exception is referred to as the equitable-estoppel exception because of the inequity that would result if a party were allowed to simultaneously claim the benefits of a contract while repudiating its burdens and conditions."
MTA, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 114 So.3d 27, 31 (Ala. 2012).
The dealership argues that the plaintiffs are third-party beneficiaries of the sales contract between it and the nephew because, its says, the plaintiffs purchased the vehicle to compensate the nephew for his employment with Infotec. The dealership further argues that, even if the plaintiffs are not in fact third-party beneficiaries of the sales contract, they are estopped from denying arbitration because, it says, their claims are dependent on the sales contract, which contains and references the arbitration agreements. The plaintiffs, on the other hand, assert that the dealership has failed to meet its burden of demonstrating that, at the time the nephew and the dealership executed the sales contract, they intended to bestow a direct, as opposed to an incidental, benefit upon the plaintiffs. Specifically, the plaintiffs state that, although they financed the purchase of the vehicle and Eastern Shore was ultimately listed as lienholder on the certificate of title, the person directly benefiting from the sale of the vehicle was the nephew-he was the only intended user of the vehicle, the vehicle was titled in his name, the vehicle was part of his compensation as an employee of Infotec, and it was agreed that he would enjoy the use of the vehicle for as long as he was an employee of the company.
In response to the dealership's equitable-estoppel argument, the plaintiffs assert that their claims against the dealership are not dependent on the sales contract. Rather, they say their claims are based on a separate and distinct agreement between them, the nephew, and the dealership in which it was agreed that the vehicle would be titled in the nephew's name, but that Eastern Shore would be listed as a lienholder on the certificate of title. According to the plaintiffs, it is this agreement the dealership breached when it failed to list Eastern Shore as lienholder on the certificate of title for the vehicle. Finally, the plaintiffs assert that their claims against the dealership do not fall within the scope of the arbitration agreements.
Although we find the plaintiffs' arguments persuasive, it is ultimately unnecessary for this Court to conduct any inquiry as to whether the plaintiffs are third-party beneficiaries under the sales contract or whether the doctrine of equitable estoppel is applicable because we agree with the plaintiffs that the dealership is seeking to *605 enforce the arbitration agreements beyond the scope of those agreements. Specifically, the arbitration agreements, as quoted above, are broad insofar as they apply to "all claims, demands, disputes or controversies of every kind or nature." However, the agreements are limited to disputes that arise "between them," i.e, the "buyer/lessor" (nephew) and the "dealer[ship]." Stated differently, the language employed in the arbitration agreements is not broad enough to encompass the plaintiffs, who are nonsignatories to those agreements. See MTA, 114 So.3d at 32-33 ("[R]egardless of whether the third-party-beneficiary or equitable-estoppel exception might otherwise apply, the narrow scope of the arbitration provisions ... precludes this Court from requiring MTA to arbitrate its third-party claims against Merrill Lynch."). In MTA, an employer entered into a deferred-compensation agreement with its employee pursuant to which the employer agreed to pay $750,000 to the employee's two children in the event the employee died before a certain age; the employee did in fact die before the specified age. A trust was established for the children's benefit; however, the employer paid less than $750,000 into the trust. The trustee of the trust had entered into three agreements with a brokerage firm to open an account to house and manage the assets of the trust; each agreement contained an arbitration provision. The children sued the employer, alleging breach of contract and unjust enrichment arising out of the employer's alleged failure to pay the full agreed-upon amount into the trust. The employer in turn filed a third-party complaint against the trustee and the brokerage firm. The brokerage firm moved the trial court to compel arbitration of the employer's third-party claims against it pursuant to the agreements between the trustee and the brokerage firm, which the employer had not signed. The brokerage firm argued to the trial court and on appeal that the employer was required to arbitrate its third-party claims against it based on the equitable-estoppel exception. This Court concluded:
"In the instant case, the arbitration provisions in the identified contracts are broad in the sense that they apply to 'any controversies' and 'all controversies,' but narrow in the sense that they apply only to controversies between 'the parties,' 'the customer' and [the brokerage firm], or 'the client' and [the brokerage firm]. The contracts containing the arbitration provisions do not define the terms 'the customer' or 'the client' in such a way that would encompass [the employer], and although [the brokerage firm] argues that [the employer] is effectively a party to the contracts containing the arbitration provisions because it was a party to the [agreement between the employer and the employee] and the grantor of the trust, we disagree. Regardless of [the employer's] involvement in establishing or funding the trust, it is neither the trust nor the trustee and is accordingly a nonsignatory to the contracts and can be held subject to the arbitration provisions only as set forth supra. See also Porter Capital Corp. [v. Thomas,] 101 So.3d [1209] at 1209 [ (Ala. Civ. App. 2012) ] (arbitration agreement entered into by borrower did not apply to borrower's shareholder or borrower's guarantor). Thus, regardless of whether the third-party-beneficiary or equitable-estoppel exception might otherwise apply, the narrow scope of the arbitration provisions in the [agreements between the trustee and the brokerage firm] precludes this Court from requiring [the employer] to arbitrate its third-party claims against [the brokerage firm]."
114 So.3d at 32-33.
Likewise, in this case, regardless of whether the third-party-beneficiary exception *606 or the equitable-estoppel exception might otherwise apply, the narrow scope of the arbitration agreements precludes the plaintiffs from being required to arbitrate their claims against the dealership because those agreements are limited by their terms to disputes between the signatories. See Jack Ingram Motors, Inc. v. Ward, 768 So.2d 362 (Ala. 1999) (holding that an arbitration provision that limited its scope to the buyer/lessor and dealer was not broad enough to cover a nonsignatory); see also Cook's Pest Control, Inc. v. Boykin, 807 So.2d 524, 527 (Ala. 2001), explaining:
"The narrow scope of the arbitration agreement serves as an independent basis for affirming the trial court's order denying Cook's motion to compel arbitration of Allen's claims against Cook's. The text of the arbitration clause limits its application to disputes arising between Cook's and the 'customer' (Knollwood).... This Court has held that a nonsignatory cannot require arbitration of a claim by the signatory against the nonsignatory when the scope of the arbitration agreement is limited to the signatories themselves. See Southern Energy Homes, Inc. v. Gary, 774 So.2d 521 (Ala. 2000).... We have recognized that the rule requiring that a contract be construed most strongly against the party who drafted it applies to an agreement to arbitrate. See Homes of Legend, Inc. v. McCollough, 776 So.2d 741 (Ala. 2000). We conclude that Cook's is attempting to enforce the clause beyond its scope, and the motion to compel arbitration fails for this reason."
Conclusion
Based on the foregoing, we conclude that the dealership has failed to meet its burden of proving the existence of a contract calling for arbitration. The sales contract containing the arbitration provision and the stand-alone arbitration agreement are both limited in their scope to disputes arising between the parties to the contract and the agreements-the nephew and the dealership. Accordingly, the trial court did not err in denying the dealership's motion to compel arbitration of the plaintiffs' claims against the dealership.
AFFIRMED.
Stuart, C.J., and Parker and Wise, JJ., concur.
Shaw, J., concurs in the result.

This case was originally assigned to another Justice on this Court. It was reassigned to Justice Sellers on May 31, 2017.

The documents establishing Eastern Shore as lienholder are not included in the record on appeal; we assume such documents contain no provision regarding arbitration.

On October 13, 2016, this Court entered an order granting the dealership's motion to stay the proceedings below in their entirety pending the outcome of this appeal.