Rel: May 12, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2022-2023

_____

### SC-2022-0675

_____

## Hyundai Construction Equipment Americas, Inc., and Hyundai Heavy Industries Co., Ltd.

### v.

## Southern Lift Trucks, LLC

### Appeal from Washington Circuit Court
### (CV-22-900029)

_____

### SC-2022-0676

_____

**Hyundai Construction Equipment Americas, Inc., and Hyundai Heavy Industries Co., Ltd.**

**v.**

**Southern Lift Trucks, LLC**

**Appeal from Washington Circuit Court
(CV-22-900029)**

COOK, Justice.

These consolidated appeals arise out of a commercial dispute between Southern Lift Trucks, LLC ("Southern"), and Hyundai Construction Equipment Americas, Inc. ("Hyundai Construction") -- an alleged subsidiary of Hyundai Heavy Industries Co., Ltd. ("Hyundai Heavy Industries").[1] Southern is a heavy-equipment dealer for Hyundai Construction. Southern filed suit against Hyundai Construction and Hyundai Heavy Industries (collectively referred to as "Hyundai") asserting various claims, including claims under the Alabama Heavy Equipment Dealer Act ("the AHEDA"), § 8-21B-1 et seq., Ala. Code 1975.

_____

[1]Although Hyundai Heavy Industries is alleged to be a parent of Hyundai Construction, it was not a signatory to the dealer agreements at issue in these appeals.

Southern also sought a preliminary injunction to prevent Hyundai (1) from unlawfully terminating one of the dealer agreements at issue in these appeals and (2) from unlawfully adding a second dealer in the territory that was covered under another dealer agreement at issue. In response, Hyundai moved to compel arbitration. The Washington Circuit Court granted Southern's request for a preliminary injunction and denied Hyundai's motion to compel arbitration.

In appeal no. SC-2022-0675, Hyundai appeals the trial court's order granting Southern's request for a preliminary injunction. For the reasons provided herein, we affirm in part and reverse in part the trial court's order and remand the cause for the trial court to enter an order consistent with this opinion.

In appeal no. SC-2022-0676, Hyundai appeals the trial court's order denying its motion to compel arbitration. For the reasons provided herein, we affirm in part and reverse in part the trial court's order and remand the cause for the trial court to enter an order consistent with this opinion.

## Facts and Procedural History

Southern is a heavy-equipment dealer based in Mobile. In 2019, it

entered into a dealer agreement with Hyundai Construction to serve as a dealer of lift trucks manufactured by Hyundai Construction ("the forklift agreement"). A year later, in 2020, it entered into a second dealer agreement to serve as a dealer of construction equipment manufactured by Hyundai Construction ("the construction-equipment agreement").

Among other things, the forklift agreement covered the sales, service, and distribution of forklifts and other "lift trucks." The construction-equipment agreement covered the sales, service, and rental of the provision of parts for, and warranties regarding earth-moving equipment used in the construction industry, such as excavators, wheel loaders, rollers, and breakers.

The territories covered by the dealer agreements overlapped, but were not identical. Specifically, the territory covered under the forklift agreement included Washington, Clarke, Choctaw, Sumter, Marengo, Wilcox, Baldwin, Conecuh, Escambia, Mobile, and Monroe Counties in Alabama, as well as certain counties in Mississippi and Florida. The territory covered under the construction-equipment agreement included only Washington, Choctaw, Clarke, Baldwin, Conecuh, Escambia, Mobile, and Monroe Counties in Alabama.

4

When the parties entered into the dealer agreements, Southern was the only dealer of lift trucks and construction equipment for Hyundai Construction within those territories. However, neither agreement was exclusive by its terms.

According to Southern, since entering into the dealer agreements, it has incurred significant expenditures building its business location, acquiring inventory and hiring and training full-time sales and mechanic staff to promote, sell, and service Hyundai Construction's products in the territories covered by the agreements. Southern provided evidence indicating that it employed 6 salespeople (including 1 customer-service specialist) -- having an average of 35 years' experience -- to handle Hyundai Construction's products. In addition, Southern provided evidence indicating that it maintained, on a full-time basis, approximately 3 road and shop technicians, each with 10-20 years' experience, who have been "Hyundai Factory Trained" to service Hyundai Construction's product.

In both dealer agreements, Southern agreed to arbitrate any and all disputes that it had with Hyundai Construction. For example, in the forklift agreement, the parties agreed to the following:

5

"In order to effectively resolve disputes between the parties efficiently and at the least cost and inconvenience, the parties agree to resolve their disputes pursuant to the terms set forth in this Section 25. <u>All disputes between the parties relating to or arising out of this Agreement</u> or the making, performance or breach thereof, or the subject matter hereof, <u>shall be resolved by arbitration in the following manner</u>:

"(a) The arbitration shall be conducted in accordance with the American Arbitration Association arbitration rules as in force on the date this agreement is executed. <u>The parties hereby submit to the exclusive personal jurisdiction of such arbitrators for all matters unless such matters are required by law to be submitted to a court or other venue;</u> <u>provided that either party may apply to any court of competent jurisdiction to seek an order compelling arbitration or a declaratory judgment with respect to the enforceability of any provision of this Agreement</u>.

"(b) The arbitration tribunal shall be formed of three arbitrators. The arbitrators shall be persons who are familiar with the commercial and manufacturing practices of heavy construction equipment business. In the event of incapacity, death or resignation of an arbitrator during the course of the arbitration proceedings, a substitute arbitrator shall be appointed or chosen pursuant to procedures set forth above.

"(c) The arbitration shall take place in Gwinnett County, Georgia or at such other location as the parties may agree and shall be conducted in the English language.

"(d) The arbitration award shall be final, binding on the parties, not subject to any appeal and shall deal with question of cost of arbitration and all matters related thereto.

"(e) Judgment upon the award rendered may be entered by any court having jurisdiction, or application may be made to such court for a judicial recognition of the award or any order of enforcement thereof."

(Emphasis added.) Likewise, the construction-equipment agreement contained a virtually identical arbitration provision.

Immediately after Southern entered into the construction-equipment agreement in 2020, Southern sold four pieces of construction equipment. However, Southern made no sales of construction equipment in 2021 or in 2022.

According to Southern, in August of 2021, Hyundai began efforts to "oust Southern as a dealer," including by threatening to reduce Southern's line of credit unless it agreed to stock a large inventory of equipment that it was not contractually required to stock. Southern claims that this was part of a plan to "create an environment in which it would not be feasible for Southern to continue as a Hyundai dealer so Hyundai could 'push out' Southern and install other dealers." Southern's brief at 11. However, Hyundai explained that its offer was intended as

7

an effort to help rectify Southern's lack of construction-equipment sales and noted that, despite factory supply shortages and supply-chain delays, its other construction-equipment dealers across the country were recording record sales and profits. In the end, Southern did not agree with Hyundai's demands.

On March 2, 2022, Hyundai Construction notified Southern of its intent to terminate the construction-equipment agreement. Hyundai Construction's correspondence to Southern informed Southern that it had a cure period of 90 days from the date of the notice and that, if it did not make corrective efforts during that cure period, the construction-equipment agreement would officially terminate on June 30, 2022 -- or 120 days from the date of its March 2, 2022, notice.

Southern responded to the termination notice on March 5, 2022, requesting information regarding Hyundai Construction's inventory of construction equipment and sales of construction equipment in Southern's territory <u>before</u> the construction-equipment agreement was entered into.

In response to Southern's request, on March 8, 2022, Hyundai Construction informed Southern that it was being terminated as a dealer

8

because Southern had failed to adequately stock construction equipment and had failed to take advantage of opportunities to place stock orders to build an inventory. Southern disputes both of these justifications and points to documents and testimony of Hyundai witnesses that cast doubt on these proffered reasons.

That same day, Hyundai Construction granted a portion of Southern's territory under the construction-equipment agreement to another dealer located in southern Alabama -- Taylor Machine Works, Inc., d/b/a Taylor Construction Equipment ("Taylor"). A few weeks later, Hyundai Construction issued a press release stating that its construction equipment was now being offered by Taylor through new "Hyundai-authorized" locations in Southern's territory. Hyundai Construction then listed Taylor as a dealer in that territory on its Web site. Likewise, Taylor issued an advertisement announcing that it was proud to be a dealer of construction equipment manufactured by Hyundai Construction.

Hyundai Construction's actions, however, were not limited solely to its construction equipment. On April 11, 2022, Hyundai Construction sent a correspondence to Southern notifying Southern that it intended to

assign an additional dealer -- Thompson Tractor Company ("Thompson") -- to serve as a lift-truck dealer in the Alabama territory covered by Southern under the forklift agreement. Hyundai Construction's correspondence also advised Southern that it intended for this arrangement to take effect after 60 days had passed and that it intended for the new dealer and Southern to work together as Hyundai Construction dealers.

> Specifically, Hyundai Construction's correspondence stated:
>
> "1. The cause of overlay of the territory is warranted due to market conditions including anticipated future changes with the competition.
>
> "2. The past, present and anticipated retail sales and service business transacted by Thompson that would improve Hyundai Construction's market position within the assigned territory.
>
> "3. Overall market coverage with head-count to improve the level of support of current and future customers."

Hyundai Construction informed Southern that it intended to add Thompson as another lift-truck dealer in Southern's territory because of an expected upcoming market opportunity. According to Hyundai Construction, effective July 1, 2022, one of its major competitors, Mitsubishi Logisnext Americas, canceled its relationship with Thompson

and replaced Thompson with another heavy-equipment dealer. As a result, Hyundai Construction believed that all of Thompson's customers would be looking for a new lift-truck dealer and that this served as a good reason to add Thompson to the territory.

Hyundai Construction framed the addition of this new dealer as beneficial for Southern because, it explained, Southern would receive the benefit of Thompson's infrastructure and servicing capabilities while being able to continue to purchase and sell lift trucks manufactured by Hyundai Construction. Not surprisingly, Southern did not see it the same way.

It is undisputed that Southern's lift-truck sales, unlike its construction-equipment sales, had been thriving during the previous two years. Southern had often met or exceeded its sales goals, and, in the first quarter of 2022 alone, its sales were 240% of its sales goals. Nevertheless, Hyundai Construction alleged that Southern was not fulfilling its duties as a lift-truck dealer because Southern did not have the infrastructure to service the equipment sold. In support of its contention, Hyundai Construction noted that Southern had failed to meet its goals for parts sales and that none of its employees had ever been fully

11

certified to service Hyundai Construction equipment. Hyundai Construction also noted that Southern had only a single service facility and that it was not sufficient in size. Southern vigorously disputed those assertions.

It is undisputed that the AHEDA requires 60 days' notice before the overlay of an additional dealer can occur and that Hyundai Construction's notice that Thompson would be added as a dealer stated that it would be effective as of June 13, 2022, i.e., after 60 days had passed. However, shortly after receiving the notice regarding the addition of Thompson, Southern became aware that some of its customers had already been contacted and provided quotes and/or had been informed that Thompson was the new lift-truck dealer for Hyundai Construction in Southern's territory.

As a result, on May 26, 2022, Southern filed suit against both Hyundai Construction and Hyundai Heavy Industries, alleging claims under multiple provisions of the AHEDA, breach of contract, multiple tort claims, and a claim of conspiracy. Southern also moved to preliminarily enjoin Hyundai from (1) terminating either of the dealer agreements with Southern and (2) permitting other dealers to market or

sell construction equipment or lift trucks in Southern's territories under those agreements. Finally, Southern sought a judgment declaring that

> "all provisions of the Dealer Agreements that are inconsistent with the AHEDA are unenforceable, null and void pursuant to Ala. Code § 8-21B-9; all provisions of the Dealer Agreements that are not 'reasonable' as defined by the AHEDA are unenforceable, null and void pursuant to Ala. Code § 8-21B-10; Hyundai violated the provisions of § 8-21B-8(c) and, by extension, the Dealer Agreements, by entering into a duplicative dealer agreement with Taylor for the same Equipment Territory serviced by [Southern] without providing [Southern] written notice at least 60-days prior thereto; Hyundai violated the provisions of § 8-21B-8(c) and, by extension, the Dealer Agreements, by deciding to enter into agreements with Thompson and Taylor within [Southern's] Territories without a reasonable basis; Hyundai violated the provisions of § 8-21B-8(b) and, by extension, the Dealer Agreements, because its actions with respect to [Southern] were arbitrary, in bad faith, or unconscionable; Hyundai unlawfully terminated or cancelled the Equipment Dealer Agreements without good cause in violation of § 8-21B-4; and Hyundai violated the provisions of § 8-21B-8(e) and, by extension, the Dealer Agreements, by discriminating between dealers with regards to price, programs, or terms of sale."

The trial court entered a temporary restraining order ("TRO") that same day, granting Southern's request for injunctive relief. Hyundai then moved to dissolve the TRO, moved to dismiss the action or, in the alternative, to change venue, and moved to compel arbitration.

Following a hearing, on June 10, 2022, the trial court granted Southern's motion for a preliminary injunction, enjoining Hyundai from

(1) terminating the dealer agreements with Southern; (2) "entering into agreements or otherwise permitting other dealers to sell Hyundai Construction's Construction Equipment or Forklift Equipment" in Southern's territories; and (3) "advertising or marketing (via website or otherwise) that other dealers are authorized to sell" the equipment at issue in Southern's territories. Hyundai appeals that decision in appeal no. SC-2022-0675. See Rule 4(a)(1)(B), Ala. R. App. P.

On June 16, 2022, the trial court denied Hyundai's motion to compel arbitration. Hyundai appeals that decision in appeal no. SC-2022-0676. See Rule 4(d), Ala. R. App. P.

## Standard of Review

First, "[w]hen this Court reviews the grant or denial of a preliminary injunction, '"[w]e review the ... [c]ourt's legal rulings de novo and its ultimate decision to issue the preliminary injunction for [an excess] of discretion."'" Monte Sano Rsch. Corp. v. Kratos Def. & Sec. Sols., Inc., 99 So. 3d 855, 861-62 (Ala. 2012) (quoting Holiday Isle, LLC v. Adkins, 12 So. 3d 1173, 1176 (Ala. 2008), quoting in turn Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 428 (2006)). When the trial court, without a jury, receives ore tenus evidence,

14

it "'determines the weight and credibility of the testimony, and its findings are presumed correct and will not be disturbed on appeal unless the record reveals the [findings] to be plainly and palpably wrong or manifestly unjust.'" Cadle Co. v. Friedman, 631 So. 2d 962, 964 (Ala. 1994) (quoting Wheeler v. Marvin's, Inc., 593 So. 2d 61, 63 (Ala. 1991)).

Next, with regard to the denial of a motion to compel arbitration, this Court's standard of review is well settled:

> "'"This Court reviews de novo the denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So. 2d 1205 (Ala. 2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So. 2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce. Id. "[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question." Jim Burke Automotive, Inc. v. Beavers, 674 So. 2d 1260, 1265 n.1 (Ala. 1995) (opinion on application for rehearing).'"'
>
> "Hoover Gen. Contractors-Homewood, Inc. v. Key, 201 So. 3d 550, 552 (Ala. 2016) (quoting Elizabeth Homes, L.L.C. v. Gantt, 882 So. 2d 313, 315 (Ala. 2003), quoting in turn Fleetwood Enters., Inc. v. Bruno, 784 So. 2d 277, 280 (Ala. 2000))."

15

Performance Builders, LLC v. Lopas, 341 So. 3d 1084, 1088-89 (Ala. 2021).

Discussion

I. Appeal No. SC-2022-0676 -- Motion to Compel Arbitration

Hyundai argues that the parties are bound by valid contracts calling for arbitration of Southern's claims. It contends, therefore, that it has met its burden of demonstrating that arbitration is applicable and that Southern has not provided any reason to deny arbitration in this case.

A party seeking to compel arbitration must show the existence of a contract calling for arbitration and that the contract evidences a transaction involving interstate commerce. STV One Nineteen Senior Living, LLC v. Boyd, 258 So. 3d 322, 324 (Ala. 2018). Specifically, the party seeking to compel arbitration "must '"produce some evidence which tends to establish its claim"'" for arbitration. Wolff Motor Co. v. White, 869 So. 2d 1129, 1131 (Ala. 2003) (citations omitted). "'Once the moving party meets that initial burden, the party opposing arbitration has the burden of presenting evidence tending to show that the arbitration agreement is invalid or that it does not apply to the dispute in question.'"

16

STV, 258 So. 3d at 324 (quoting Alabama Title Loans, Inc. v. White, 80 So. 3d 887, 891 (Ala. 2011), citing in turn Bowen v. Security Pest Control, Inc., 879 So. 2d 1139, 1141 (Ala. 2003)).

Hyundai, the party seeking to compel arbitration, met its initial burden of proving the existence of two agreements calling for arbitration and that the agreements involved interstate commerce. Specifically, it is undisputed -- even by Southern -- that the dealer agreements between Hyundai Construction and Southern contained nearly identical arbitration provisions that expressly stated that the parties agreed to arbitrate "[a]ll disputes between the parties relating to or arising out of" those agreements. (Emphasis added.) It is also undisputed that the agreements involved interstate commerce -- i.e., sales, service, and distribution of construction equipment and lift trucks in Alabama and in other southern states. Accordingly, the burden then shifted to Southern to show that the arbitration provisions in the dealer agreements were invalid or did not apply to the present dispute.

Southern argues that the arbitration provisions in the dealer agreements contain express "carve-out" exceptions for matters that are required by law to be "submitted to a court or other venue" and for certain

17

declaratory-judgment actions. It further argues that the arbitration provisions in the dealer agreements are not enforceable because Hyundai has waived them. Finally, Southern contends that any arbitration proceedings in the present case should not include Hyundai Heavy Industries because the arbitration provisions, by their very terms, apply only to disputes "between the parties" and Hyundai Heavy Industries was not a party to the dealer agreements. We will address each argument in turn.

## A. Carve-outs

First, Southern argues that the arbitration provisions in the dealer agreements are not broad enough to cover this dispute because the arbitration provisions contain an "express carve-out." That "express carve-out," Southern says, provides an exception to arbitration for matters that " 'are required by law to be submitted to a court or other venue.' " Southern's brief at 26.

We note, however, that Southern not only has quoted this clause out of context, but also has quoted only a part of the sentence containing the clause. To begin with, the scope of the arbitration provisions is stated much earlier in the arbitration provisions, in clear and unambiguous

18

language providing as follows: "<u>All disputes between the parties relating to or arising out of this Agreement</u> or the making, performance or breach thereof, or the subject matter hereof, <u>shall be resolved by arbitration</u> in the following manner ...." (Emphasis added). " 'This Court has held [that] where a contract signed by the parties contains a valid arbitration clause that refers only to claims "arising out of or relating to" the contract, that clause has a broader application than an arbitration clause that refers only to claims "arising from" the agreement.' " <u>STV</u>, 258 So. 3d at 325 (quoting <u>Reynolds & Reynolds Co. v. King Autos., Inc.</u>, 689 So. 2d 1, 2-3 (Ala. 1996)) (emphasis omitted).

In contrast, the carve-out clause quoted by Southern is in subpart (a) of each arbitration provision, which follows the paragraph containing this unambiguous language stating the scope of the arbitration provision. Immediately before subpart (a) are these words: "in the following manner." In other words, the clause quoted by Southern is in a subpart that relates to the "manner" of the arbitration and not the scope of the arbitration provision. For instance, subpart (a) includes text about the use of the procedural rules of the American Arbitration Association and about personal jurisdiction. Likewise, the remaining subparts in that

19

portion of each arbitration provision deal with similar "manner" or procedural issues -- i.e., the number and qualifications of arbitrators; the location of arbitration proceedings and the language to be used; the finality of the arbitration award and the apportionment of costs; and the judicial-recognition procedure for any arbitration award.

Further, we do not read the language quoted by Southern as an "exception" to the mandatory language found in each arbitration provision. As noted above, Southern omits key language from the sentence containing the clause that makes clear that the sentence is describing the parties' agreement to submit to the personal jurisdiction of the arbitrators -- an issue not in dispute here -- and is, therefore, not describing the scope of the arbitration provision.  The full text of the relevant portion of the sentence containing the clause in each dealer agreement is as follows: "The parties hereby submit to the exclusive personal jurisdiction of such arbitrators for all matters unless such matters are required by law to be submitted to a court or other venue." (Emphasis added.) It is simply not possible to read this as an "exception" to the mandatory, unambiguous, and broad language regarding the scope of the arbitration provision discussed above. When reviewing an

20

agreement, we must review the entire agreement and not simply a portion of one sentence of a subpart of a paragraph. See, e.g., State v. Lorillard Tobacco Co., 1 So. 3d 1, 7 (Ala. 2008) ("In construing an arbitration agreement, a court must construe the contract 'as a whole; detached words or clauses standing alone are not controlling on the question of interpretation, each being viewed in relation to the agreement as an entity.' " (citation omitted)).[2]

Southern also argues that the following clause constitutes a second "express carve-out" exception to the arbitration provisions at issue: "The parties hereby submit to the exclusive personal jurisdiction of such

---

[2]Even if we were willing to read the clause quoted by Southern as creating an exception to arbitration, we would still hold that the dealer agreements require arbitration of the parties' dispute. Southern argues that the AHEDA mandates that any contract provision that requires a dealer to waive its rights to a jury trial is "void and unenforceable," citing Ex parte Terex USA, LLC, 260 So. 3d 813, 822 (Ala. 2018), which barred the application of an outbound-forum-selection clause because of the applicability of the AHEDA. Thus, Southern concludes, this dispute is a matter "required by law to be submitted to a court." The problem is that Southern is claiming that the parties' dispute is required by Alabama law to be submitted to a court. This argument ignores long-standing federal law. The Federal Arbitration Act, 9 U.S.C. § 1 et seq., clearly preempts a state law prohibiting arbitration of a particular cause of action. See Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686-87 (1996). Such federal preemption did not exist in Terex, which dealt with a forum-selection clause. Thus, the parties' dispute is not one "required by law to be submitted to a court."

21

arbitrators for all matters unless such matters are required by law to be submitted to a court or other venue; <u>provided that either party may apply to any court of competent jurisdiction to seek an order compelling arbitration or a declaratory judgment with respect to the enforceability of any provision of this Agreement</u>."  (Emphasis added.)

Unlike the language discussed earlier, the emphasized language does appear to provide an "express carve-out" exception to the arbitration provisions at issue ("provided that either party may ...."). However, as Hyundai correctly notes, the scope of that exception is limited because it applies only "to a declaratory judgment" concerning the "enforceability of any provision of this Agreement." Thus, those portions of Southern's declaratory-judgment claim relating to the "enforceability of any provision" of the dealer agreements are subject to this express carve-out.

### B. Waiver

Next, Southern argues that the arbitration provisions in the dealer agreements are not enforceable because, it says, Hyundai has waived them.  Specifically, Southern argues that Hyundai's motion to dismiss merely mentioned arbitration in passing in a single sentence and did not make a full-throated argument for arbitration until it filed its motion to

22

compel arbitration on the eve of the hearing set for all motions.

"'A party seeking to prove a waiver of a right to arbitrate carries a heavy burden, and the courts will not lightly infer a waiver of the right to compel arbitration.'" Conseco Fin. Corp.-Ala. v. Salter, 846 So. 2d 1077, 1081 (Ala. 2002) (quoting Lee v. YES of Russellville, Inc., 784 So. 2d 1022, 1028-29 (Ala. 2000)). This Court will find a waiver of the right to compel arbitration only when "'"the party seeking arbitration has so substantially invoked the litigation process that to compel arbitration will substantially prejudice the party opposing it."'" Id. (citations omitted; emphasis added); see also Crews v. National Boat Owners Ass'n Marine Ins. Agency, Inc., 46 So. 3d 933, 941 (Ala. 2010).

A party's reference to the arbitrability of a plaintiff's claims in judicial filings before it has moved the trial court to compel arbitration evidences just the opposite of waiver -- that is, it evidences an intent not to waive its right to arbitration. See ClimaStor IV, L.L.C. v. Marshall Constr., L.L.C., 4 So. 3d 452, 457-58 (Ala. 2008); U.S. Pipe & Foundry Co. v. Curren, 779 So. 2d 1171 (Ala. 2000) (holding that, by asserting a right to arbitration in its answer, the defendant preserved its right, which it later sought to enforce by filing a motion to compel arbitration). See also

O'Neal v. Bama Exterminating Co., 147 So. 3d 403 (Ala. 2013) (finding no waiver even though defendant waited 16 months after complaint was filed to file motion to compel arbitration and had answered and participated in discovery and had filed a motion for partial judgment on the pleadings); Mutual Assurance, Inc. v. Wilson, 716 So. 2d 1160, 1164 (Ala. 1998)("'"'Merely answering on the merits, asserting a counterclaim (or cross-claim) or participating in discovery, without more, will not constitute a waiver.' … [T]he earliest point at which waiver of the right to arbitration may be found is 'when the other party files an answer on the merits.'"'") (citations omitted).

This action was commenced on May 26, 2022. Hyundai filed its motion to dismiss 6 days later on June 1, 2022, and then filed its motion to compel arbitration 5 days after that on June 6, 2022 -- 11 calendar days after the complaint was filed. Hyundai's motion was filed before any hearings of any kind. The facts here do not support a finding of a waiver of its arbitration rights by Hyundai. This is especially true when a preliminary injunction is being sought, sharply increasing the demands on all counsel. Thus, we are unpersuaded by Southern's waiver argument.

## C. Hyundai Heavy Industries

Finally, we note that Southern correctly points out that Hyundai Heavy Industries is not a signatory to either dealer agreement and, thus, is not technically a party to either arbitration provision at issue. Southern argues that any arbitration proceedings in the present case should not include Hyundai Heavy Industries because, it says, the arbitration provisions -- by their terms -- apply only to disputes "between the parties." Southern's brief at 36-39 (citing <u>Daphne Auto., LLC v. Eastern Shore Neurology Clinic, Inc.</u>, 245 So. 3d 599, 606 (Ala. 2017), and <u>Cook's Pest Control, Inc. v. Boykin</u>, 807 So. 2d 524, 527 (Ala. 2001)). It also argues that Hyundai Heavy Industries is actively disputing in the trial court whether it is a third-party beneficiary of the dealer agreements and therefore cannot claim such status for the purpose of arbitration.

Hyundai Heavy Industries argues, however, that it is Southern that is claiming that Hyundai Heavy Industries is a third-party beneficiary of the entire dealer agreements and that, as a result, Southern is equitably estopped from disputing that the arbitration provisions apply to it in the present case. Hyundai Heavy Industries also argues that the claims

against it are "intertwined" with Southern's claims against Hyundai Construction and that Southern has alleged both a conspiracy and an agency relationship between both entities. As a result, Hyundai Heavy Industries contends that the arbitration provisions apply to it and that arbitration must be compelled in this case.

It is undisputed that Southern asserted in its complaint that the allegedly wrongful actions taken by Hyundai Construction "at all relevant times … described herein were taken <u>at the direction of and/or for the benefit</u> of [Hyundai Heavy Industries] <u>in an agency capacity</u>." (Emphasis added.) Further, Southern specifically alleged in its complaint that Hyundai Construction and Hyundai Heavy Industries "conspired together via concerted action to achieve an unlawful purpose and/or to achieve their purposes by unlawful means, including via direct and flagrant violations of the AHEDA, as set forth more fully herein." Southern also alleged in its complaint that Hyundai Heavy Industries was the parent company of Hyundai Construction.[3]

---

[3]Southern also argues to this Court that the preliminary injunction should apply to Hyundai Heavy Industries based on these very allegations and argues that an injunction would be "meaningless" if it did not apply to Hyundai Heavy Industries. Southern's brief at 43.

In <u>Assurant, Inc. v. Mitchell</u>, 26 So. 3d 1171 (Ala. 2009), the plaintiff sued an insurer and its parent company asserting breach-of-contract, bad-faith, and other tort claims. The trial court denied the motion of the parent company to compel arbitration. In that case, the arbitration agreement contained language indicating that it applied only to disputes "between" the contracting parties. It stated that arbitration applied to disputes "between YOU and US," with "US" being the insurer. <u>Id.</u> at 1172. Nevertheless, this Court reversed the trial court's order denying the parent company's motion to compel arbitration and ordered arbitration because the plaintiff had "alleged an agency or alter ego relationship" by alleging that the parent company was acting "by and through" the insurer to commit the alleged wrongs. <u>Id.</u> at 1175. This Court cited a number of cases in support of its holding. <u>See</u> <u>Jim Walter Homes, Inc. v. Spraggins</u>, 853 So. 2d 913, 919-20 (Ala. 2002) (recognizing that a nonsignatory parent company was entitled to invoke right to arbitration); <u>Ex parte Gray</u>, 686 So. 2d 250 (Ala. 1996) (recognizing that a nonsignatory "agent" was allowed to invoke right to arbitration); <u>Stevens v. Phillips</u> 852 So. 2d 123, 131 (Ala. 2002) (recognizing that an agent "stands in the shoes" of her principal). <u>See</u> <u>also</u> <u>McDougle v.</u>

27

Silvernell, 738 So. 2d 806, 809 (Ala. 1999) (recognizing that a closing attorney, as agent of title insurer, had standing to enforce an arbitration provision even though the attorney was not a party to the agreement containing arbitration provision).

The same is true here. Southern has expressly alleged an "agency capacity" between Hyundai Construction and Hyundai Heavy Industries and has specifically alleged that the parent -- Hyundai Heavy Industries -- was acting by and through the subsidiary -- Hyundai Construction. In fact, there are no allegations that any actions taken in this case were taken by Hyundai Heavy Industries alone. Instead, the actions taken were alleged to have been taken by Hyundai Construction as the agent and co-conspirator of Hyundai Heavy Industries. Under these circumstances, we are unpersuaded by Southern's argument and hold that any arbitration proceedings held in this dispute must include both Hyundai Construction and Hyundai Heavy Industries.

### D. Summary

"'In interpreting an arbitration provision, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language

itself or an allegation of <u>waiver</u>, delay, or a like defense to arbitrability."'" <u>STV</u>, 258 So. 3d at 325 (citations omitted; emphasis altered). "'"Thus, a motion to compel arbitration should not be denied unless it may be said with <u>positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute</u>."'" <u>Id.</u> (citations omitted; emphasis altered). Based on the foregoing, we conclude that Southern met its burden by demonstrating that the arbitration provisions do not apply only to portions of its declaratory-judgment claim. However, it failed to meet its burden to demonstrate that the arbitration provisions do not apply to its other claims. For these reasons, we affirm the trial court's order denying Hyundai's motion to compel arbitration as to any portions of Southern's declaratory-judgment claim relating to the "enforceability of any provision" of the dealer agreements, but we reverse the trial court's order denying Hyundai's motion as to all of Southern's other claims.

### II. Appeal No. SC-2022-0675 -- The Preliminary Injunction

Next, Hyundai contends that the trial court erred in issuing a preliminary injunction. Specifically, Hyundai argues that the trial court was without jurisdiction to issue the preliminary injunction in the

present case and that the evidence presented during the hearing on the motion below did not support a finding that Southern was entitled to injunctive relief.

Alabama caselaw provides that a trial court has jurisdiction to enter preliminary injunctive relief to maintain the status quo between the parties, even when the dispute should be sent to arbitration. See Spinks v. Automation Pers. Servs., Inc., 49 So. 3d 186, 190 (Ala. 2010) ("[W]e conclude that the trial court had jurisdiction to issue a preliminary injunction to preserve the status quo pending completion of the arbitration proceeding." (emphasis added)); and Holiday Isle, 12 So. 3d at 1177 (stating that the "trial court had jurisdiction to enter a preliminary injunction to order equitable relief to preserve the status quo" and reasoning that the American Arbitration Association Commercial Rules recognize such an option). A trial court may grant such equitable relief "'where an arbitral award could not return the parties substantially to the status quo.'" Holiday Isle, 12 So. 3d at 1177 (quoting Drago v. Holiday Isle, L.L.C., 537 F. Supp. 2d 1219, 1222 (S.D. Ala. 2007)).

As explained previously, Southern is the dealer for two separate

lines of equipment and is a party to two separate dealer agreements. We must, therefore, analyze each agreement separately.

As to the construction-equipment agreement, the preliminary injunction was not necessary "to preserve the status quo." The status quo as to the construction equipment was no sales taking place. The undisputed facts are that Southern had not sold a single piece of construction equipment since 2020. Even if there are any sales in the future by the new dealer -- Taylor -- and even if liability is found, damages would appear simple to calculate. Likewise, it is difficult to understand how there could be irreparable harm given the complete lack of sales of construction equipment, and Southern has not provided such an explanation in its briefing.[4] We, thus, reverse the trial court's order insofar as it granted Southern's motion for a preliminary injunction as to the construction-equipment agreement.

Whether the trial court erred in granting a preliminary injunction as to the forklift agreement is a closer call. First, Southern has provided

---

[4]Although Southern argues that the lack of sales could be attributed to failures and problems of Hyundai (for instance, supply-chain issues), it remains true that there have not been any such sales for two years. That is the status quo.

evidence of both significant and consistent sales of lift trucks and other equipment subject to the forklift agreement. It has also provided significant evidence indicating that it has invested a great deal in its efforts to serve as a dealer of Hyundai Construction's lift-truck equipment, including hiring staff dedicated to selling and servicing the equipment, training such staff, and building a reputation and a client base.[5] Southern also argues that § 8-21B-13, Ala. Code 1975, a part of the AHEDA, specifically provides that any party who has suffered "bodily injury, loss of profit, or property damage as a result of a violation of" the provisions of the AHEDA "may bring a civil action … to enjoin further violations."

Hyundai argues, however, that there would be no irreparable harm, noting that money damages would be adequate and that such damages can be easily calculated by reviewing historical sales numbers. Hyundai

---

[5]For example, Southern provided evidence indicating that it employs 6 salespeople (including 1 customer-service specialist) -- having an average of 35 years' experience -- to handle Hyundai Construction's products. In addition, Southern provided evidence indicating that it maintained, on a full-time basis, approximately 3 road and shop technicians, each with 10-20 years' experience, who have been "Hyundai Factory Trained" to service Hyundai Construction's products.

further argues the forklift agreement is nonexclusive and that the "unending" injunction provides Southern with more relief than it is entitled to under either the forklift agreement or the AHEDA. It further argues that it did not terminate the forklift agreement but merely added another dealer in the same territory and that the additional dealer will actually benefit Southern.

First, although it is true that the AHEDA provides that it may be enforced by injunction, § 8-21B-13 does not dictate the result here because it provides for a <u>final</u> injunction, not a preliminary injunction. However, we agree that such express statutory provisions bear on whether a trial court should enter a preliminary injunction, given that the legislature has made an affirmative decision to provide the remedy of injunction. For instance, if we reverse the preliminary injunction on this record of significant sales and significant investment by Southern in people, marketing, training, and relationships, we risk providing a hollow victory should Southern ultimately prevail, thereby eviscerating the remedy that the legislature has provided. Strong sales numbers are the status quo today. Our ruling is confined to this record at this time, and we emphasize that we do not intend to announce a bright-line rule

that a preliminary injunction should be granted in all AHEDA cases (or in all cases in which the legislature has listed an injunction as a possible remedy for a statutory violation).

Second, Southern has provided evidence of harm to its reputation and goodwill, as well as evidence of customer attrition, and the trial court found that such harm was occurring. In other words, Southern not only has provided evidence of potential harm, but has provided actual evidence that the status quo was changing. As noted above, shortly after the notice regarding the addition of Thompson as a dealer, Southern became aware that some of its customers had already been contacted and provided quotes and/or had been informed that Thompson was the new Hyundai Construction dealer for lift-truck equipment in Southern's territory. In other words, the status quo was changing and was changing before the expiration of the 60 days' notice period required under the AHEDA.

Third, Southern contends that the preliminary injunction as to the forklift agreement is not "indefinite." We agree. As it currently stands, the preliminary injunction will last for the duration of the action -- or until otherwise dissolved upon a motion from one of the parties. It is not

34

unlimited in time.

Finally, the nonexclusive nature of the forklift agreement does not dictate the result here; the AHEDA is part of Alabama law, and, as long as it is constitutional, it supersedes applicable provisions of the forklift agreement. Ex parte Terex USA, LLC, 260 So. 3d 813, 822 (Ala. 2018). It is not our role to question the wisdom of the legislature's choices.

Ultimately, this is a close call in this case. However, based upon the evidence provided in the record and the trial court's findings, we cannot say that the trial court exceeded its discretion in enjoining the overlay of Thompson as a dealer in Southern's territory under the forklift agreement.

Based on the foregoing, we affirm the trial court's order insofar as it granted Southern's motion for a preliminary injunction as to the forklift agreement. However, we reverse the trial court's order insofar as it granted a preliminary injunction related to the construction-equipment agreement.

## Conclusion

In appeal no. SC-2022-0675, we affirm the trial court's order insofar as it granted Southern's motion for a preliminary injunction as to the

forklift agreement. However, we reverse the trial court's order insofar as it issued a preliminary injunction related to the construction-equipment agreement, and we remand the cause for the trial court to enter an order consistent with this opinion.

In case no. SC-2022-0676, we affirm the trial court's order insofar as it denied Hyundai's motion to compel arbitration as to any provisions of Southern's declaratory-judgment claim relating to the "enforceability of any provision" of the dealer agreement. However, we reverse the trial court's order insofar as it denied Hyundai's motion to compel arbitration as to Southern's other claims, and we remand the cause for the trial court to enter an order consistent with this opinion.

SC-2022-0675 -- AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

SC-2022-0676 -- AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Wise, Stewart, and Mitchell, JJ., concur.

Parker, C.J., concurs in part and dissents in part, with opinion.

Shaw, Bryan, Sellers, and Mendheim, JJ., concur in the result.

PARKER, Chief Justice (concurring in part and dissenting in part).

In appeal number SC-2022-0676, I concur in affirming the circuit court's denial of the motion to compel arbitration filed by Hyundai Construction Equipment Americas, Inc., and Hyundai Heavy Industries, Co., Ltd. (collectively "Hyundai"), as to portions of the declaratory-judgment claim asserted against them by Southern Lift Trucks, LLC ("Southern"). And I concur in reversing the denial of the arbitration motion as to Southern's other claims that were not based on the Alabama Heavy Equipment Dealer Act ("AHEDA"), § 8-21B-1 et seq., Ala. Code 1975. But I would affirm that denial as to Southern's other claims that were based on AHEDA, because those claims were within the arbitration provisions' exception for "matters … required by law to be submitted to a court …."

"'Agreements to arbitrate are essentially creatures of contract,' and ordinary contract rules govern the interpretation of arbitration provisions." Orkin Exterminating Co. v. Larkin, 857 So. 2d 97, 103 (Ala. 2003) (citation omitted). "When interpreting a contract, a court should give the terms of the contract their clear and plain meaning …." Brewbaker Motors, Inc. v. Belser, 776 So. 2d 110, 112 (Ala. 2000). Here,

37

the arbitration provisions expressly exempt from arbitration matters that are "required by law to be submitted to a court." Section 8-21B-13 of AHEDA provides: "Notwithstanding the terms, provisions, or conditions of any dealer agreement, any person who suffers bodily injury, loss of profit, or property damage as a result of a violation of [AHEDA] may bring a civil action in a court of competent jurisdiction in this state …." With that language, AHEDA guarantees heavy-equipment dealers "the right to bring an action under the AHEDA in this State, and no contrary provision in a dealer agreement will foreclose the dealer's right to do so." Ex parte Terex USA, LLC, 260 So. 3d 813, 822 (Ala. 2018) (emphasis omitted) (dispute regarding in-state versus out-of-state venue). That is, AHEDA claims are conditionally "required by law to be submitted to a court": If a dealer chooses to bring the action in State court, it must be adjudicated there rather than by arbitration.

Here, Southern exercised its right to bring AHEDA claims in court, so those claims were "required by law to be submitted to a court." Accordingly, the arbitration provisions' language does not require arbitration of Southern's AHEDA claims.

In appeal number SC-2022-0675, I concur in reversing the preliminary injunction prohibiting Hyundai from terminating the construction-equipment agreement. Southern has not demonstrated that it had no adequate remedy at law via a damages judgment at the end of the case. But I would also reverse the preliminary injunction prohibiting Hyundai from adding another forklift dealer, because Southern has not demonstrated that it satisfied the elements necessary to obtain a preliminary injunction. See State ex rel. Marshall v. TY Green's Massage Therapy, Inc., 332 So. 3d 413, 427 (Ala. 2021) (Parker, C.J., concurring in result) ("To obtain a preliminary injunction, a plaintiff must demonstrate that (1) without the injunction, the plaintiff will suffer an irreparable injury; (2) the plaintiff has no adequate remedy at law; (3) the plaintiff has a reasonable likelihood of success on the merits (sometimes stated as a 'reasonable chance'); and (4) the hardship that the injunction will impose on the defendant will not unreasonably outweigh the benefit to the plaintiff."); Capmark Bank v. RGR, LLC, 81 So. 3d 1258, 1267 (Ala. 2011) (listing elements).